# JENKINS *v.* GEORGIA

No. 73–557.  Argued April 15, 1974—Decided June 24, 1974

154

*Louis Nizer* argued the cause for appellant. With him on the briefs were *Tench C. Coxe, William H. Schroder, Jr.,* and *James Bouras.*

*Tony H. Hight* argued the cause and filed a brief for appellee.[*]

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Appellant was convicted in Georgia of the crime of distributing obscene material. His conviction, in March 1972, was for showing the film "Carnal Knowledge" in a movie theater in Albany, Georgia. The jury that found appellant guilty was instructed on obscenity pursuant to the Georgia statute, which defines obscene material in language similar to that of the definition of obscenity set forth in this Court's plurality opinion in *Memoirs* v. *Massachusetts,* 383 U. S. 413, 418 (1966):

"Material is obscene if considered as a whole, applying community standards, its predominant appeal is to prurient interest, that is, a shameful or morbid

---

[*]Briefs of *amici curiae* urging reversal were filed by *Peter M. Fishbein* and *Lester Pollack* for the National Association of Theatre Owners; by *Stanley Fleishman* and *Sam Rosenwein* for the Adult Film Association of America, Inc.; by *Ephraim London* for the Directors Guild of America, Inc.; by *William D. North* for the American Library Assn.; by *Maxwell J. Lillienstein* for the American Booksellers Assn., Inc., et al.; by *Michael A. Bamberger* for the Council for Periodical Distributors Assns., Inc., et al.; by *Ira M. Millstein* for the Association of American Publishers, Inc.; and by *Irwin Karp* for the Authors League of America, Inc.

*Charles H. Keating, Jr., pro se, Richard M. Bertsch, James J. Clancy,* and *Albert S. Johnston III* filed a brief for Charles H. Keating, Jr., as *amicus curiae* urging affirmance.

interest in nudity, sex or excretion, and utterly without redeeming social value and if, in addition, it goes substantially beyond customary limits of candor in describing or representing such matters." Ga. Code Ann. § 26–2101 (b) (1972).[1]

We hold today in *Hamling* v. *United States, ante,* p. 87, that defendants convicted prior to the announcement of our *Miller* decisions but whose convictions were on direct appeal at that time should receive any benefit available to them from those decisions. We conclude here that the film "Carnal Knowledge" is not obscene under the constitutional standards announced in *Miller* v. *California,* 413 U. S. 15 (1973), and that the First and Fourteenth Amendments therefore require that the judgment of the Supreme Court of Georgia affirming appellant's conviction be reversed.

Appellant was the manager of the theater in which "Carnal Knowledge" was being shown. While he was exhibiting the film on January 13, 1972, local law enforcement officers seized it pursuant to a search warrant. Appellant was later charged by accusation, Ga. Code Ann. § 27–704 (1972), with the offense of distributing obscene material.[2] After his trial in the Superior Court of Dough-

---

[1] Section 26–2101 is entitled "Distributing obscene materials." Subsection (a) of § 26–2101 provides in relevant part: "A person commits the offense of distributing obscene materials when he . . . exhibits or otherwise disseminates to any person any obscene material of any description, knowing the obscene nature thereof . . . ." Subsection (c) of § 26–2101 provides that "[material], not otherwise obscene, may be obscene under this section if the distribution thereof . . . is a commercial exploitation of erotica solely for the sake of their prurient appeal." Subsection (d) provides that a first offense under the section shall be punished as a misdemeanor and that any subsequent offense shall be punished by one to five years' imprisonment and/or a fine not to exceed $5,000.

[2] The accusation, App. 8, charged appellant "with the offense of Distributing Obscene Material" for knowingly ex-

erty County, the jury, having seen the film and heard testimony, returned a general verdict of guilty on March 23, 1972.[3] Appellant was fined $750 and sentenced to 12 months' probation. He appealed to the Supreme Court of Georgia, which by a divided vote affirmed the judgment of conviction on July 2, 1973. That court stated that the definition of obscenity contained in the Georgia statute was "considerably more restrictive" than the new test set forth in the recent case of *Miller* v. *California, supra,* and that the First Amendment does not protect the commercial exhibition of "hard core" pornography. The dissenting Justices, in addition to other disagreements with the court, thought that "Carnal Knowledge" was entitled to the protection of the First and Fourteenth Amendments. Appellant then appealed

---

hibiting a motion picture to the general public which contained conduct showing "(a) an act of sexual intercourse, (b) a lewd exposure of the sexual organs, (c) a lewd appearance in a state of partial or complete nudity, (d) a lewd caress or indecent fondling of another person" contrary to the laws of Georgia. The latter-quoted language appears in Ga. Code Ann. § 26–2011, entitled "Public indecency," which makes performance of any of the listed acts in a public place a misdemeanor. Under Ga. Code Ann. § 26–2105, it is a crime to exhibit a motion picture portraying acts which would constitute "public indecency" under § 26–2011 if performed in a public place. Appellant's arrest warrant specified § 26–2105 as the statute he was charged with violating. In view of our holding today, we need not reach appellant's contention that he was denied due process because the warrant specified only § 26–2105, while the jury was allowed to convict under § 26–2101. However, we note that appellant's demurrer to the accusation demonstrates his awareness that he was being charged with the § 26–2101 offense, App. 9, and that he requested numerous instructions on obscenity, *id.,* at 47–49.

[3] Appellant's trial jury was alternatively instructed under subsections (a) and (c) of § 26–2101 (pandering), see n. 1, *supra,* and under § 26–2105, see n. 2, *supra.*

to this Court and we noted probable jurisdiction, 414 U. S. 1090 (1973).

We agree with the Supreme Court of Georgia's implicit ruling that the Constitution does not require that juries be instructed in state obscenity cases to, apply the standards of a hypothetical statewide community. *Miller* approved the use of such instructions; it did not mandate their use. What *Miller* makes clear is that state juries need not be instructed to apply "national standards." We also agree with the Supreme Court of Georgia's implicit approval of the trial court's instructions directing jurors to apply "community standards" without specifying what "community." *Miller* held that it was constitutionally permissible to permit juries to rely on the understanding of the community from which they came as to contemporary community standards, and the States have considerable latitude in framing statutes under this element of the *Miller* decision. A State may choose to define an obscenity offense in terms of "contemporary community standards" as defined in *Miller* without further specification, as was done here, or it may choose to define the standards in more precise geographic terms, as was done by California in *Miller*.

We now turn to the question of whether appellant's exhibition of the film was protected by the First and Fourteenth Amendments, a question which appellee asserts is not properly before us because appellant did not raise it on his state appeal. But whether or not appellant argued this constitutional issue below, it is clear that the Supreme Court of Georgia reached and decided it. That is sufficient under our practice. *Raley* v. *Ohio,* 360 U. S. 423, 436 (1959). We also note that the trial court instructed the jury on charges other than the distribution charge.[4] However, the jury returned a general verdict

---

[4] See n. 3, *supra.*

and appellee does not suggest that appellant's conviction can be sustained on these alternative grounds. Cf. *Stromberg* v. *California,* 283 U. S. 359, 367–368 (1931).

There is little to be found in the record about the film "Carnal Knowledge" other than the film itself.[5] However, appellant has supplied a variety of information and critical commentary, the authenticity of which appellee does not dispute. The film appeared on many "Ten Best" lists for 1971, the year in which it was released. Many but not all of the reviews were favorable. We believe that the following passage from a review which appeared in the Saturday Review is a reasonably accurate description of the film:

> "[It is basically a story] of two young college men, roommates and lifelong friends forever preoccupied with their sex lives. Both are first met as virgins. Nicholson is the more knowledgeable and attractive of the two; speaking colloquially, he is a burgeoning bastard. Art Garfunkel is his friend, the nice but troubled guy straight out of those early Feiffer cartoons, but *real.* He falls in love with the lovely Susan (Candice Bergen) and unknowingly shares her with his college buddy. As the 'safer' one of the two, he is selected by Susan for marriage.
>
> "The time changes. Both men are in their thirties, pursuing successful careers in New York. Nicholson has been running through an average of a dozen women a year but has never managed to meet the right one, the one with the full bosom, the good legs,

---

[5] Appellant testified that the film was "critically acclaimed as one of the ten best pictures of 1971 and Ann Margret has received an Academy Award nomination for her performance in the picture." He further testified that "Carnal Knowledge" had played in 29 towns in Georgia and that it was booked in 50 or 60 more theaters for spring and summer showing. App. 24.

the properly rounded bottom. More than that, each and every one is a threat to his malehood and peace of mind, until at last, in a bar, he finds Ann-Margret, an aging bachelor girl with striking cleavage and, quite obviously, something of a past. 'Why don't we shack up?' she suggests. They do and a horrendous relationship ensues, complicated mainly by her paranoidal desire to marry. Meanwhile, what of Garfunkel? The sparks have gone out of his marriage, the sex has lost its savor, and Garfunkel tries once more. And later, even more foolishly, again." [6]

Appellee contends essentially that under *Miller* the obscenity *vel non* of the film "Carnal Knowledge" was a question for the jury, and that the jury having resolved the question against appellant, and there being some evidence to support its findings, the judgment of conviction should be affirmed. We turn to the language of *Miller* to evaluate appellee's contention.

*Miller* states that the questions of what appeals to the "prurient interest" and what is "patently offensive" under the obscenity test which it formulates are "essentially questions of fact." 413 U. S., at 30. "When triers of fact are asked to decide whether 'the average person, applying contemporary community standards' would consider certain materials 'prurient' it would be unrealistic to require that the answer be based on some abstract formulation . . . . To require a State to structure obscenity proceedings around evidence of a *national* 'community standard' would be an exercise in futility." *Ibid.* We held in *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49 (1973), decided on the same day, that expert testimony

---

[6] Review of "Carnal Knowledge" by Hollis Alpert, Saturday Review, July 3, 1971, p. 18.

as to obscenity is not necessary when the films at issue are themselves placed in evidence. *Id.,* at 56.

But all of this does not lead us to agree with the Supreme Court of Georgia's apparent conclusion that the jury's verdict against appellant virtually precluded all further appellate review of appellant's assertion that his exhibition of the film was protected by the First and Fourteenth Amendments. Even though questions of appeal to the "prurient interest" or of patent offensiveness are "essentially questions of fact," it would be a serious misreading of *Miller* to conclude that juries have unbridled discretion in determining what is "patently offensive." Not only did we there say that "the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary," 413 U. S., at 25, but we made it plain that under that holding "no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct . . . ." *Id.,* at 27.

We also took pains in *Miller* to "give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced," that is, the requirement of patent offensiveness. *Id.,* at 25. These examples included "representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated," and "representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Ibid.* While this did not purport to be an exhaustive catalog of what juries might find patently offensive, it was certainly intended to fix substantive constitutional limitations, deriving from the First Amendment, on the type of material subject to such a

determination. It would be wholly at odds with this aspect of *Miller* to uphold an obscenity conviction based upon a defendant's depiction of a woman with a bare midriff, even though a properly charged jury unanimously agreed on a verdict of guilty.

Our own viewing of the film satisfies us that "Carnal Knowledge" could not be found under the *Miller* standards to depict sexual conduct in a patently offensive way. Nothing in the movie falls within either of the two examples given in *Miller* of material which may constitutionally be found to meet the "patently offensive" element of those standards, nor is there anything sufficiently similar to such material to justify similar treatment. While the subject matter of the picture is, in a broader sense, sex, and there are scenes in which sexual conduct including "ultimate sexual acts" is to be understood to be taking place, the camera does not focus on the bodies of the actors at such times. There is no exhibition whatever of the actors' genitals, lewd or otherwise, during these scenes. There are occasional scenes of nudity, but nudity alone is not enough to make material legally obscene under the *Miller* standards.

Appellant's showing of the film "Carnal Knowledge" is simply not the "public portrayal of hard core sexual conduct for its own sake, and for the ensuing commercial gain" which we said was punishable in *Miller*. *Id.*, at 35. We hold that the film could not, as a matter of constitutional law, be found to depict sexual conduct in a patently offensive way, and that it is therefore not outside the protection of the First and Fourteenth Amendments because it is obscene. No other basis appearing in the record upon which the judgment of conviction can be sustained, we reverse the judgment of the Supreme Court of Georgia.

*Reversed.*

MR. JUSTICE DOUGLAS, being of the view that any ban on obscenity is prohibited by the First Amendment, made applicable to the States through the Fourteenth, concurs in the reversal of this conviction. See *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 70–73 (1973) (DOUGLAS, J., dissenting).

MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEW-ART and MR. JUSTICE MARSHALL join, concurring in the result.

Adopting a restatement of the *Roth-Memoirs\** definition of "obscenity," the Court in *Miller* v. *California,* 413 U. S. 15 (1973), held that obscene material could be regulated, provided that "(a) . . . 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . . ; (b) . . . the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) . . . the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.,* at 24. It was my view then—and it remains so—that the Court's reformulation hardly represented a solution to what Mr. Justice Harlan called "the intractable obscenity problem," *Interstate Circuit, Inc.* v. *Dallas,* 390 U. S. 676, 704 (1968) (concurring and dissenting opinion). Today's decision confirms my observation in *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49 (1973), that the Court's new formulation does not extricate us from the mire of case-by-case determinations of obscenity. I there noted, in dissent:

"Ultimately, the reformulation must fail because it still leaves in this Court the responsibility of determining in each case whether the materials are pro-

---

*See *Roth* v. *United States,* 354 U. S. 476 (1957), and *Memoirs* v. *Massachusetts,* 383 U. S. 413 (1966).

tected by the First Amendment. The Court concedes that even under its restated formulation, the First Amendment interests at stake require 'appellate courts to conduct an independent review of constitutional claims when necessary,' *Miller* v. *California*[, 413 U. S. 15, 25], citing Mr. Justice Harlan's opinion in *Roth,* where he stated, 'I do not understand how the Court can resolve the constitutional problems now before it without making its own independent judgment upon the character of the material upon which these convictions were based.' 354 U. S., at 498. Thus, the Court's new formulation will not relieve us of 'the awesome task of making case by case at once the criminal and the constitutional law.' And the careful efforts of state and lower federal courts to apply the standard will remain an essentially pointless exercise, in view of the need for an ultimate decision by this Court. In addition, since the status of sexually oriented material will necessarily remain in doubt until final decision by this Court, the new approach will not diminish the chill on protected expression that derives from the uncertainty of the underlying standard. I am convinced that a definition of obscenity in terms of physical conduct cannot provide sufficient clarity to afford fair notice, to avoid a chill on protected expression, and to minimize the institutional stress, so long as that definition is used to justify the outright suppression of any material that is asserted to fall within its terms." 413 U. S., at 100–101. (Footnote omitted.)

After the Court's decision today, there can be no doubt that *Miller* requires appellate courts—including this Court—to review independently the constitutional fact of obscenity. Moreover, the Court's task is not limited to

reviewing a jury finding under part (c) of the *Miller* test that "the work, taken as a whole, lack[ed] serious literary, artistic, political, or scientific value." 413 U. S., at 24. *Miller* also requires independent review of a jury's determination under part (b) of the *Miller* test that "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law." *Ibid.* As the Court notes, *ante,* at 160:

> "Even though questions of . . . patent offensiveness are 'essentially questions of fact,' it would be a serious misreading of *Miller* to conclude that juries have unbridled discretion in determining what is 'patently offensive.' Not only did we there say that 'the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary,' 413 U. S., at 25, but we made it plain that under that holding 'no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct. . . .' *Id.,* at 27."

In order to make the review mandated by *Miller,* the Court was required to screen the film "Carnal Knowledge" and make an independent determination of obscenity *vel non.* Following that review, the Court holds that "Carnal Knowledge" "could not, as a matter of constitutional law, be found to depict sexual conduct in a patently offensive way, and that it is therefore not outside the protection of the First and Fourteenth Amendments because it is obscene." *Ante,* at 161.

Thus, it is clear that as long as the *Miller* test remains in effect "one cannot say with certainty that material is obscene until at least five members of this Court, apply-

ing inevitably obscure standards, have pronounced it so." *Paris Adult Theatre I* v. *Slaton,* 413 U. S., at 92 (BRENNAN, J., dissenting). Because of the attendant uncertainty of such a process and its inevitable institutional stress upon the judiciary, I continue to adhere to my view that, "at least in the absence of distribution to juveniles or obtrusive exposure to unconsenting adults, the First and Fourteenth Amendments prohibit the State and Federal Governments from attempting wholly to suppress sexually oriented materials on the basis of their allegedly 'obscene' contents." *Id.,* at 113. It is clear that, tested by that constitutional standard, the Georgia obscenity statutes under which appellant Jenkins was convicted are constitutionally overbroad and therefore facially invalid. I therefore concur in the result in the Court's reversal of Jenkins' conviction.