Argued June 17, affirmed July 14, reconsideration denied August 20, petition for review denied October 14, 1975

STATE OF OREGON, *Respondent, v.*
JOEL ANTHONY LILES (No. C 75-01-0209 Cr),
*Appellant.*

STATE OF OREGON, *Respondent, v.*
RALPH ALEXANDER BREMNER
(No. C 75-01-0211 Cr), *Appellant.*

537 P2d 1182

*Howard R. Lonergan,* Portland, argued the cause and filed the brief for appellants.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Defendants were indicted for dissemination of obscene material, Oregon Laws 1973, ch 699, § 4, pp 1593-94, and convicted in a consolidated trial by a judge without a jury. In this consolidated appeal defendants assert that the trial court erred (1) in overruling a demurrer to the indictments and (2) in overruling a motion in arrest of judgment.

Defendants' demurrer to the indictments was based on the contention that Oregon Laws 1973, ch 699①,

_____

① Adopted by the people in a referendum held in November 1974, ch 699 has not yet been written into the Oregon Revised Statutes by the Legislative Counsel Committee of the Legislature.

Oregon Laws 1973, ch 699 provides:

"**Section 1.** Sections 2 to 4 of this Act are added to and made a part of ORS 167.060 to 167.095.

"**Section 2.** As used in this 1973 Act unless the context requires otherwise:

"(1) 'Live public show' means a public show in which

embraces more than one subject in violation of Art IV, § 20 of the Oregon Constitution. Article IV, § 20

human beings, animals, or both appear bodily before spectators or customers.

"(2) 'Public show' means any entertainment or exhibition advertised or in some other fashion held out to be accessible to the public or member of a club, whether or not an admission or other charge is levied or collected and whether or not minors are admitted or excluded.

"**Section 3.** (1) It is unlawful for any person to knowingly engage in sadomasochistic abuse or sexual conduct in a live public show.

"(2) Violation of subsection (1) of this section is a Class A misdemeanor.

"(3) It is unlawful for any person to knowingly direct, manage, finance or present a live public show in which the participants engage in sadomasochistic abuse or sexual conduct.

"(4) Violation of subsection (3) of this section is a Class C felony.

"**Section 4.** (1) A person commits the crime of disseminating obscene material if he knowingly makes, exhibits, sells, delivers or provides, or offers or agrees to make, exhibit, sell, deliver or provide, or has in his possession with intent to exhibit, sell, deliver or provide any obscene writing, picture, motion picture, films, slides, drawings or other visual reproduction.

"(2) As used in subsection (1) of this section, matter is obscene if:

"(a) It depicts or describes in a patently offensive manner sadomasochistic abuse or sexual conduct;

"(b) The average person applying contemporary state standards would find the work, taken as a whole, appeals to the prurient interest in sex; and

"(c) Taken as a whole, it lacks serious literary, artistic, political or scientific value.

"(3) In any prosecution for a violation of this section, it shall be relevant on the issue of knowledge to prove the advertising, publicity, promotion, method of handling or labeling of the matter, including any statement on the cover or back of any book or magazine.

"(4) No employe is liable to prosecution under this section or under any city or home-rule county ordinance for exhibiting or possessing with intent to exhibit any obscene

is directed against "log-rolling"[2] in that it provides:

"Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. * * *

"* * * * * ."

motion picture provided the employe is acting within the scope of his regular employment at a showing open to the public.

"(5) As used in this section, 'employe' means an employe as defined in subsection (3) of ORS 167.075.

"(6) Disseminating obscene material is a Class A misdemeanor.

"Section 5. ORS 167.002 is amended to read:

"167.002. As used in ORS 167.002 to 167.027, unless the context requires otherwise:

"(1) 'Place of prostitution' means any place where prostitution is practiced.

"(2) 'Prostitute' means a male or female person who engages in sexual conduct **or sexual contact** for a fee.

"(3) 'Prostitution enterprise' means an arrangement whereby two or more prostitutes are organized to conduct prostitution activities.

"(4) 'Sexual conduct' means sexual intercourse or deviate sexual intercourse.

"(5) **'Sexual contact' means any touching of the sexual organs or other intimate parts of a person not married to the actor for the purpose of arousing or gratifying the sexual desire of either party.**

"Section 6. ORS 167.007 is amended to read:

"167.007. (1) A person commits the crime of prostitution if:

"(a) He engages in or offers or agrees to engage in sexual conduct **or sexual contact** in return for a fee [.] ; **or**

"(b) **He pays or offers or agrees to pay a fee to engage in sexual conduct or sexual contact.**

"(2) Prostitution is a Class A misdemeanor." (Brackets in original.)

[2] "* * * This section of the Constitution was designed to do away with the several abuses, among which was the practice of inserting in one bill two or more unrelated pro-

The basis of defendants' contention is that Sections 1 to 4 of ch 699 relate to the obscenity provisions of ORS 167.060 to 167.095 whereas Sections 5 and 6 relate to prostitution provisions of ORS 167.002 to 167.027 (*see* n 1, supra).

■ The words " 'matters properly connected therewith' " in Art IV, § 20 "include every matter germane to and having a natural connection with the general subject of the act * * *." *Lovejoy v. Portland,* 95 Or 459, 466-67, 188 P 207 (1920). We think the various sections of ch 699 do not violate the log-rolling prohibition in that they are "germane to" and have "a natural connection with the general subject" of criminal conduct in the area of sex and its depiction. *See Foeller v. Housing Authority of Portland,* 198 Or 205, 257-58, 256 P2d 752 (1953) *State v. Laundy,* 103 Or 443, 204 P 958, 206 P 290 (1922).

■ In their motion in arrest of judgments defendants contend that the facts stated in the indictments[9] do not constitute an offense. ORS 136.500 and 135.630 (4). Defendants do not attack the indictments as such, but contend the indictments are based on statutes (Ore-

_____

visions so that those favoring one provision could be compelled, in order to secure its adoption, to combine with those favoring another provision, and by this process of log-rolling the adoption of both provisions could be accomplished, when neither, if standing alone, could succeed on its own merits. * * *" Lovejoy v. Portland, 95 or 459, 465, 188 P 207 (1920).

⑨ The indictments read as follows:

"* * * * *

"The said defendant [Joel Anthony Liles], on or about December 27, 1974, in the County of Multnomah, State of Oregon, did unlawfully and knowingly sell an obscene motion picture, to-wit: 'You'll Like It' (handwriting stating '2 Male Gay Experiment'), to Edward M. May, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

"* * * * * *."

gon Laws 1973, ch 699, § 4, and the related definitions contained in ORS 167.060) which are overbroad and vague, thus violating the First Amendment to the United States Constitution, and for this reason the facts stated in the indictments do not charge an offense.

In its brief the state succinctly discusses the relation of obscenity to vagueness and overbreadth doctrines:

"'* * * * *

"The U.S. Supreme Court held in *Roth v. U.S.*, 354 U.S. 476, 77 S Ct 1304, 1 LEd2d 1498 (1957) that the States could prohibit obscenity because obscenity is not protected by the First Amendment to the U.S. Constitution. However, state obscenity statutes have been subject to attack on two grounds. First, because they are overbroad, prohibiting expression which is not obscenity, but is still protected by the First Amendment. Such overbroad statutes are invalid for prohibiting protected expression. Second, because they are too vague. Vague statutes violate an alleged offender's due process rights under the Fourteenth Amendment to the U.S. Constitution since [he is] unable to ascertain what is unlawful under the statute and because enforcement officials can be arbitrary in picking behavior for prosecution under such a statute. Vague statutes are also invalid due to the 'chilling effect'

"'* * * * *

"The said defendant [Ralph Alexander Bremner], on or about December 27, 1974, in the County of Multnomah, State of Oregon, did unlawfully and knowingly sell an obscene motion picture, to-wit: 'Beautiful Piece,' to Michael Hentschell, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

"'* * * * *."

No question was raised as to the definiteness and certainty of the allegations contained in the indictments and we express no opinion thereon.

they have on the exercise of expression protected by the First Amendment.

"To meet both defects of overbroadness and vagueness, the U.S. Supreme Court has established and refined a standard of what is obscene and can be prohibited by the states. * * *

"* * * * *."

The most recent comprehensive statement of that standard was made in *Miller v. California,* 413 US 15, 93 S Ct 2607, 37 L Ed 2d 419 (1973). The Supreme Court continues to refine and apply the *Miller* standards. *See, e.g., Jenkins v. Georgia,* 418 US 153, 94 S Ct 2750, 41 L Ed 2d 642 (1974); *Hamling v. United States,* 418 US 87, 94 S Ct 2887, 41 L Ed 2d 590 (1974). The *Miller* opinion summarized the standards for statutes designed to regulate obscene materials:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, [citation omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct *specifically defined by the applicable state law;* and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * *" (Emphasis supplied.) 413 US at 24.

The pertinent portions of Oregon Laws 1973, ch 699, § 4, pp 1593-94 (hereafter Section 4), provide:

"(1) A person commits the crime of disseminating obscene material if he knowingly makes, exhibits, sells, delivers or provides, or offers or agrees to make, exhibit, sell, deliver or provide, or has in his possession with intent to exhibit, sell, deliver or provide any obscene writing, picture, motion picture, films, slides, drawings or other visual reproduction.

"(2) As used in subsection (1) of this section, matter is obscene if:

"(a) It depicts or describes in a patently offensive manner sadomasochistic abuse or sexual conduct;

"(b) The average person applying contemporary state standards would find the work, taken as a whole, appeals to the prurient interest in sex; and

"(c) Taken as a whole, it lacks serious literary, artistic, political or scientific value.

"* * * * *."

Subsection (2)(b) of Section 4 follows guideline (a) of *Miller* with the additional refinement (as approved in *Hamling v. United States,* supra) that "community" standards need not be national standards. Subsection (2)(c) of Section 4 clearly follows guideline (c) of *Miller.*

The remaining question is whether subsection (2)(a) falls within guideline (b) of *Miller.* The reference in subsection (2)(a) to matter which "depicts or describes in a patently offensive manner" is virtually the same as that in *Miller* guideline (b). The issue, then, is whether sexual conduct is sufficiently "specifically defined" as required by *Miller* guideline (b). *Miller* gave "a few plain examples of what a state statute could define for regulation" under guideline (b):

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 US at 25.

The Supreme Court has since noted that these examples "did not purport to be an exhaustive catalog" but that they do "fix substantive constitutional limitations." *Jenkins v. Georgia,* supra, 418 US at 160.

Section 4 is "added to and made a part of ORS 167.060 to 167.095" by Oregon Laws 1973, ch 699, § 1, p 1593. ORS 167.060 contains the following definitions:

"* * * * *

"(9) 'Sado-masochistic abuse' means flagellation or torture by or upon a person who is nude or clad in undergarments or in revealing or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

"(10) 'Sexual conduct' means human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification.

"* * * * *."

These definitions were enacted as part of Oregon Laws 1971, ch 743, §§ 255-262, pp 1937-41, which was cited as one of two "examples of state laws directed at depiction of defined physical conduct, as opposed to expression" in n 6 of *Miller v. California,* supra, 413 US at 24. Footnote 6 was a reference to the requirement, in the body of the *Miller* opinion, that sexual conduct "must be specifically defined by the applicable state law * * *." 413 US at 24. Thus, Section 4 incorporates a definition of sexual conduct and sado-masochistic abuse which has been impliedly cited as fulfilling the specificity requirements of *Miller.* Even absent the n 6 reference, the definitions of sexual conduct and sadomasochistic abuse are specifically and narrowly drawn so as to be well within the "substantive constitutional limitations" set out in *Miller* guideline (b).

■ We are, therefore, satisfied that Section 4 fol-

lows the guidelines of *Miller v. California,* supra, as to what may be defined and regulated as "obscenity." Since Section 4 meets the *Miller* standards as refined and defined in *Jenkins v. Georgia,* supra, and *Hamling v. United States,* supra, we hold it is not in violation of the First Amendment to the U.S. Constitution.

Defendants make a further argument that the trial judge erred in the standards he followed in applying the obscenity statute to the facts of this case. This was not raised as an assignment of error as required by Procedure Rules 6.18 and 6.55 of this court.

Affirmed.