Argued April 25, reversed August 11, 1975

STATE OF OREGON, *Respondent, v.* GINGER SHRYL CARDWELL, aka GINGER SHERYL CARDWELL (No. C-74-07-2176), *Appellant.*

STATE OF OREGON, *Respondent, v.* ROY ALLEN FREEMAN (No. C-74-07-2164), *Appellant.*

539 P2d 169

*Howard R. Lonergan,* Portland, argued the cause and filed the brief for appellants.

*C. Clark Leone,* Assistant Attorney General, Portland, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

Defendant Ginger Cardwell, publisher of "Ginger and Spice Adult Entertainment Guide," was convicted of displaying nudity for advertising purposes, ORS 167.090.[1] Her employe, Roy Freeman, who dis-

---

[1] ORS 167.090 states:

"(1) A person commits the crime of publicly displaying nudity or sex for advertising purposes if, for advertising purposes, he knowingly:

"(a) Displays publicly or causes to be displayed publicly a picture, photograph, drawing, sculpture or other visual representation or image of a person or portion of the human body that depicts nudity, sado-masochistic abuse, sexual conduct or sexual excitement, or any page, poster or other written or printed matter bearing such representation 'or a verbal description or narrative account of such items or activities, or any obscenities; or

"(b) Permits any display described in this section on premises owned, rented or operated by him.

"(2) Publicly displaying nudity or sex for advertising purposes is a Class A misdemeanor."

tributed the publication, was convicted of furnishing obscene materials to a minor, ORS 167.065.[2] Defendants' appeals present numerous similar assignments of error. We find dispositive defendants' claim that the materials in question are protected by the First Amendment to the United States Constitution.

The materials involved (State's Exhibits 4 and 5 hereinafter identified as "the exhibits") are two issues of the "Entertainment Guide." Each is in the format of an eight-page tabloid newspaper. Each contains commercial advertising for adult book stores and theaters, classified advertising, and essays on contemporary social issues. However, a major part of each issue consists of text and pictures promoting a chain of "Sexy Saunas" operated by defendant Cardwell. It is primarily the pictures that are alleged to be obscene. The quality of the photography and printing is not uniform. It appears that some of the pictures were originally of completely nude women but were "retouched" before printing with the addition of black markings covering the pubic areas and nipples and areolas of the subjects' breasts.

---

[2] ORS 167.065 states:

"(1) A person commits the crime of furnishing obscene materials to minors if, knowing or having good reason to know the character of the material furnished, he furnishes to a minor:

"(a) Any picture, photograph, drawing, sculpture, motion picture, film or other visual representation or image of a person or portion of the human body that depicts nudity, sado-masochistic abuse, sexual conduct or sexual excitement; or

"(b) Any book, magazine, paperback, pamphlet or other written or printed matter, however reproduced, or any sound recording which contains matter of the nature described in paragraph (a) of this subsection, or obscenities, or explicit verbal descriptions or narrative accounts of sexual conduct, sexual excitement or sado-masochistic abuse.

"(2) Furnishing obscene materials to minors is a Class A misdemeanor. Notwithstanding ORS 161.635 and 161.655, a person convicted under this section may be sentenced to pay a fine, fixed by the court, not exceeding $10,000."

The statutes under which the defendants were convicted both depend upon the definition of "nudity" which is set forth in ORS 167.060(5) as follows:

"* * * uncovered, or less than opaquely covered, post-pubertal human genitals, pubic areas, the post-pubertal human female breast below a point immediately above the top of the areola, or the covered human male genitals in a discernibly turgid state. For purposes of this definition, a female breast is considered uncovered if the nipple *only* or the nipple and the areola *only* are covered." (Emphasis supplied.)

The only materials in the exhibits that come within this definition are the pictures of human female breasts with the markings described. Thus, defendants' First Amendment contentions relate solely to the last sentence of ORS 167.060(5).

The general definition of obscenity is stated in *Miller v. California,* 413 US 15, 24, 93 S Ct 2607, 37 L Ed 2d 419 (1973):

"* * * A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."

The Supreme Court elaborated on this general definition in *Jenkins v. Georgia,* — US ——, 94 S Ct ——, 41 L Ed 2d 642 (1974), a case raising the question whether the movie "Carnal Knowledge" was obscene. In holding it was not for purposes of display to consenting adults, a unanimous court stated:

"* * * While the subject matter of the picture is, in a broader sense, sex, and there are scenes in which sexual conduct including 'ultimate sexual acts' is to be understood to be taking place, the camera does not focus on the bodies of the actors at such times. There is no exhibition whatever of

the actors' genitals, lewd or otherwise, during these scenes. There are occasional scenes of nudity, but nudity alone is not enough to make material legally obscene under the Miller standards." 41 L Ed 2d at 650.

The exhibits are even less revealing than the movie in question in *Jenkins*.

■ However, the First Amendment standards are different for purposes of distribution to minors (ORS 167.065) and advertising (ORS 167.090). In these categories the state can prohibit dissemination of material to minors, and to nonconsenting adults by advertising, that it could not constitutionally prohibit to consenting adults. The question thus becomes whether the relevant First Amendment standards are sufficiently different to deny constitutional protection to the exhibits. Two United States Supreme Court cases, both decided after the trials of these defendants, compel a negative answer.

In *Bigelow v. Virginia*, 43 USLW 4734 (June 16, 1975), the court held that a state could not constitutionally proscribe an advertisement for out-of-state abortion services. The court held the fact that an advertisement has commercial aspects does not negate all First Amendment guarantees. 43 USLW, supra, at 4737. The court did suggest that a variable First Amendment standard might apply to advertising, but made no effort to define what that variable standard might be, other than to hold the abortion advertisement before it was protected by the First Amendment.

■ *Erznoznik v. City of Jacksonville*, 43 USLW 4809 (June 23, 1975), involved an ordinance that prohibited displaying a movie containing nudity at a drive-in theater if the movie could be seen outside the theater from a public place. The Supreme Court held the ordinance was unconstitutional. The court

first considered the conflict between the right of free expression and the right of privacy—a conflict germane to prosecutions under ORS 167.090, the advertising statute. When the government attempts to regulate the content of otherwise protected speech to protect the privacy of the unwilling viewer, generally the burden falls on the viewer to avoid bombardment of his sensibilities by averting his eyes, except in situations involving the degree of captivity that makes it impractical for the unwilling to avoid exposure. 43 USLW, supra, at 4811.

In *Erznoznik* the court also considered whether all nudity can be regarded as obscene if it involves display to minors. The court held it could not and said: "[U]nder any test of obscenity as to minors not all nudity would be proscribed." 43 USLW, supra, at 4812, n 10. The court suggested that, even in the context of display to minors, nudity would only be obscene if erotic "in some significant way." 43 USLW, supra, at 4812.

■ Applying *Bigelow* and *Erznoznik* to the exhibits, we must conclude that the material therein is constitutionally protected. The last sentence of ORS 167.060(5) cannot validly prohibit this material which is even more innocuous than the nudity the Supreme Court held was constitutionally protected in *Erznoznik*.

Reversed.