Susan June AVERY, Petitioner,

v.

STATE OF MARYLAND and Lieutenant E. L. Rector Harford County Detention Center, Respondents.

Civ. No. JH–79–1342.

United States District Court, D. Maryland.

Nov. 12, 1980.

Stephen L. Miles, Baltimore, Md., for petitioner.

Stephen H. Sachs, Atty. Gen. and F. Ford Loker, Asst. Atty. Gen., Baltimore, Md., for respondents.

## MEMORANDUM AND ORDER

HOWARD, District Judge.

This habeas corpus petition for review of a conviction and sentence imposed by the Circuit Court of Harford County was brought under 28 U.S.C. § 2254.

### I. BACKGROUND

The petitioner Susan Avery was originally tried and convicted in the Maryland District Court in Harford County for violation of an Aberdeen, Maryland obscenity statute. After receiving a sentence of ten days incarceration and a $100.00 fine, petitioner appealed to the Circuit Court for Harford County in accord with Md.Cts. & Jud.Proc. Code Ann. § 12–401 (cum. supp. 1979). After a *de novo* jury trial in the Circuit Court for Harford County, the Honorable Broadnax Cameron, Jr., presiding, the petitioner was again found guilty and again sentenced to ten days incarceration and a $100.00 fine.[1] The petitioner then filed a petition for a writ of *certiorari* in the Court of Appeals of Maryland in which she raised the same contentions she is currently raising:

1. The Maryland Court of Appeals' review of her conviction was mandatory;

2. The charging document was defective;

3. Aberdeen Ordinance No. 248 (under which Avery was convicted) is unconstitutional;

4. The state failed to produce required expert testimony;

5. Petitioner was unconstitutionally denied her right to produce witnesses on her behalf; and

6. Petitioner was improperly sentenced.

*Certiorari* to the Maryland Court of Appeals was denied.

The respondents asserted Ms. Avery failed to exhaust state remedies available to her under Maryland's Post Conviction Procedure Act. Md.Ann.Code art. 27, § 645A et seq. (cum. supp. 1978).

On February 13, 1980, this Court entered an order directing the respondents to show cause why the writ should not issue; that order was based on the determination that appeal under the Maryland Post Conviction Procedure Act was not required because a fully developed factual record was before the state court of appeals when *certiorari* was denied. *See Thompson v. Peyton*, 406 F.2d 473 (4th Cir. 1968). Thus, her presentation of issues to the Maryland Court of Appeals was deemed, by this Court, a full exhaustion of Ms. Avery's state remedies. *Id.*

The doctrine of comity does not preclude review by this Court.

### II. DISCUSSION

A. *The Propriety of the Denial of Certiorari by the Maryland Court of Appeals*

█ The petitioner and, apparently, the state[2] contend that appellate review of an

---

1. Execution of the sentence was stayed by the state circuit court pending appeal and habeas corpus review.

2. The state contends the required appellate review was the *de novo* circuit court trial after the district court conviction.

obscenity conviction is mandatory. Accordingly, Ms. Avery contends this Court should direct the Maryland Court of Appeals to grant *certiorari*.

This belief in mandatory review is seemingly based on a dictum in Justice Brennan's concurring opinion in *Jenkins v. Georgia*, 418 U.S. 153, 163–164, 94 S.Ct. 2750, 2756, 41 L.Ed.2d 642 (1974):

> After the Court's decision today, there can be no doubt that *Miller* [Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419] requires appellate courts—including this Court—to review independently the constitutional fact of obscenity. Moreover, the Court's task is not limited to reviewing a jury finding under part (c) of the *Miller* test that "the work, taken as a whole, lack[ed] serious literary, artistic, political, or scientific value." 413 U.S., at 24 [93 S.Ct., at 2615]. *Miller* also requires independent review of a jury's determination under part (b) of the *Miller* test that "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law."

Justice Brennan's dictum should be read in the context of the majority opinion which merely held that a factual and legal appraisal was required when an obscenity conviction was under appellate review, *Jenkins, supra* at 159–160, 94 S.Ct. at 2754–55:

> *Miller* states that the questions of what appeals to the "prurient interest" and what is "patently offensive" under the obscenity test which it formulates are "essentially questions of fact." 413 U.S., at 30 [93 S.Ct., at 2618].
>
> *      *      *      *      *      *
>
> But all of this does not lead us to agree with the Supreme Court of Georgia's apparent conclusion that the jury's verdict against appellant virtually precluded all further appellate review of appellant's assertion that his exhibition of the film was protected by the First and Fourteenth Amendments. Even though questions of appeal to the "prurient interest" or of patent offensiveness are "essentially questions of fact," it would be a serious

misreading of *Miller* to conclude that juries have unbridled discretion in determining what is "patently offensive." [The Court said in *Miller*] that "the First Amendment values applicable to the States through the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary[.]"

The imposition of mandatory review would increase the "institutional stress on the judiciary" that concerned Justice Brennan. *Jenkins, supra* at 165, 94 S.Ct. at 2757. It is this Court's opinion that neither *Miller* nor *Jenkins* alters the discretion of the Maryland Court of Appeals to grant *certiorari*.

It should be noted that Ms. Avery has been afforded considerable judicial safeguards in this matter. She was initially convicted at the state district court level, was given a *de novo* jury trial at the circuit court level, and has had her conviction reviewed by this Court.

The decision of the Maryland Court of Appeals denying *certiorari* is not a basis upon which habeas corpus relief should be granted.

### B. *Sufficiency of the Charging Document*

■ Ms. Avery's contention that the charging document did not adequately inform her of the offense charged is without merit. Her contention is supported by her misapplication of *Ayre v. State*, 21 Md.App. 61, 318 A.2d 828 (1974). In *Ayre*, the applicant had been charged with a violation of a Maryland statute prohibiting, *inter alia*, the sale and distribution of obscene matter. The charging document merely paraphrased the code section. Consequently, one count charged numerous offenses specified in the disjunctive (*e. g.* Ayre was charged with distributing or offering to distribute, or possessing with intent to distribute, obscene material). The defendant was unable to ascertain which offenses were actually charged.

■ The petitioner was charged with unlawfully performing an obscene dance. She

contends that the charging document's failure to specify which of 14 prohibited real or simulated acts she allegedly performed was fatally defective. The accused, of course, has a right to notice of the specific charge against her. *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948). This specificity is necessary to (a) permit an adequate defense preparation and (b) to permit the defendant to plead judgment as a bar to subsequent prosecution on the same offense. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

Specification in the charging document of the individual acts the petitioner allegedly simulated would not have enabled her to prepare for trial with any higher degree of proficiency. Her factual witness described the dance Ms. Avery performed; it remained for the jury to determine whether it was obscene. It is not apparent in what manner her defense would have been altered had specific lewd acts been charged in the charging document.

Further, as the offense charged was obscene dancing, the charging document provided broad protection against double jeopardy. The petitioner may not be charged in the future with some specific violation of the ordinance (*e. g.* simulated fellatio) based on the incident at issue here.

Thus, the charging document provides no basis for habeas corpus relief.

C. *The Constitutionality of Ms. Avery's Conviction Under the Ordinance.*

■ The petitioner attacks the constitutionality of the Harford County Ordinance as overly broad because the drafters added obscene acts and simulations not enumerated in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The specific acts added were fondling of the buttocks, anus, breast, or the genitalia of oneself or another. This contention ignores the Supreme Court's declaration that the *Miller*

list "did not purport to be an exhaustive catalog of what juries might find patently offensive." *Jenkins, supra*, 418 U.S. at 160, 94 S.Ct. at 2755. Rather, the *Miller* list was formulated "to give a few plain examples of what a state statute could define for regulation under . . . the standard announced." *Ibid.*

Ms. Avery apparently concedes the constitutionality of those portions of the ordinance which echo the *Miller* list.[3] It is important to note that the state's witnesses described such acts enumerated in *Miller* as simulated fellatio:

Q. Did she [the defendant] have any covering, any clothing, at all on her breast?

A. No.

Q. Anything on her pubic area?

A. No.

Q. All right. Now, then would you tell us what you saw the Defendant do?

\* \* \* \* \* \*

A. And there was a young man there . . . a very young man from his haircut and facial features . . . looked very young.

Q. Okay. And what happened with respect to this young man?

A. He was sitting there sort of slouched forward in a chair, (witness indicating position) and had a bottle of Miller's . . . a pony bottle . . . that was sitting between his legs . . . his crotch.

\* \* \* \* \* \*

Q. Okay. And then what happened?

A. Then she came right up to in front of him. She wasn't no more than eighteen or twenty inches away from him and kneeled down in front of him.

Q. And when she kneeled down in front of him, what did either one of them do?

**3.** The county ordinance contained the customary separability clause; thus, even if this Court were to hold unconstitutional those portions of the ordinance to which Ms. Avery takes exception, the portions which embody the *Miller* list would still be effective. Consequently, her conviction would stand.

A. She never physically touched him. She put her mouth down on the bottle and made up and down motions with her head on the bottle. But she never did come in contact with him.

Q. Her mouth was on the bottle?

A. That's correct.

Transcript, May 15, 1979 ("Tr. 1") at 69, 75–76. There was also testimony that the petitioner simulated masturbation:

Q. Okay. And then what happened after that?

A. She would dance in a circular fashion ... and during the second record that played, she placed her—one of her hands down on the area of her vagina.

* * * * * *

Q. Repeat the testimony again. What did she do?

A. She first placed her open palm down near the area of the vagina and then down onto the—her vagina.

Q. Now, did she do anything when her hand was on her vagina?

A. She would rub her vagina with her own hand in an up and down fashion to the beat of the music.

Q. All right. And then when she did that, what followed?

A. Occasionally when her hand would travel all the way down, her fingers would go out of sight between her legs.

Tr. 1 at 103–104. The state also produced testimony that the petitioner engaged in an act of simulated cunnilingus:

Q. Okay. Now, would you go over on the diagram and mark a C2 at the location?

(Witness responding)

A. This chair right here, I believe, the second one up from the steps. At this time she had danced over into this area here and there were people sitting in almost all the chairs around the table, and there was a fella sitting at this chair, right in this area here, sitting down right up against the stage, just like a ledge. It goes around and you can place your beverage on it. And she danced over to this portion of the stage and then sat down on the edge of the stage with her legs dangling down over the edge of the stage. The young man that was sitting there, she placed her feet—I couldn't actually see where her feet went. They were either on top of each knee or on the seat pad of the side of either side of the knee.

And she reached forward and grabbed the customer's head, on each side of his head around the area of his ears, and pulled his head down into the area of her crotch.

* * * * * *

Tr. 1 at 104–105. Testimony was also given that the petitioner engaged in an act of simulated intercourse:

Q. Now, you testified that she grabbed this young man's head and moved it to the area of her crotch. And what, if anything, happened after she did that?

A. She held it there for, I would say, approximately five seconds, after which she raised her head back up and then when she stepped down on the floor itself, got up off the stage—sitting on the stage, stepped down onto the floor itself and was then placing her feet on either side of the chair, straddling the same customer ... same gentleman. I could see that he had a very large bottle, looked like a Miller beer bottle, on the chair between his legs.

Q. Now, could you ... demonstrate to the Court and the Jury just what the young man did?

A. The bottle was held in this fashion here, holding it—instead of acting it up on the stage, Ms. Avery stood with her foot on each side of the chair facing him and then sat down in this area of his lap, and at this point I couldn't see whether the bottle was between the customer and

her or what. Like I say, by this time, I'm off to their side.

Tr. 1 at 105–106.

The petitioner's sole basis for impugning the constitutionality of Ordinance 248 is that its coverage is broader than the "few plain examples" of *Miller*. The Supreme Court has specifically rejected this notion. *Jenkins, supra*, at 160, 94 S.Ct. 2755. As there was sufficient evidence that Ms. Avery's performance was within the proscriptions of *Miller*, her assault on the constitutionality of the Aberdeen Ordinance is an ineffectual basis for her habeas corpus petition.

### D.  *The State's Failure to Produce Required Expert Testimony.*

■   Ms. Avery's contention that the state was required to put on expert testimony is bottomed on a faulty conclusion reached through her misunderstanding of *Paris Adult Theatre I v. Slaton*, 413 U.S. 56, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). In *Paris* and other cases, the Supreme Court has held that expert testimony is unnecessary where the offensive material is introduced as evidence. 413 U.S. at 56. Ms. Avery posits the inverse: that expert testimony is required where the material is not in evidence. Her contention has two fatal flaws.

First, the obscene "material" was put into evidence; in other words, there was descriptive testimony about the dance she performed. Absent a contemporaneous video recording of her performance, eyewitness accounts were sufficient evidence of her actions.

Second, her contention ignores the Supreme Court's advice that expert testimony is generally of little assistance in obscenity cases:

This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. Cf. 2 J. Wigmore, Evidence §§ 556, 559 (3d ed. 1940). No such assistance is needed by jurors in obscenity cases; indeed the "expert witness" practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony. "Simply stated, hard core pornography . . . can and does speak for itself." We reserve judgment, however, on the extreme case, not presented here, where contested materials are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the prurient interest.

*Paris, supra*, n. 6 at 56, 93 S.Ct. n. 6 at 2634 (internal citations omitted).

The presentation of expert testimony by the prosecution is neither mandated nor likely to be helpful to the jury in the routine obscenity case. Thus, the state's failure to provide such testimony is not a basis for habeas corpus relief.

### E.  *The Circuit Court's Refusal to Permit the Testimony of Kenneth Iman.*

Ms. Avery's next contention is that she was unconstitutionally deprived of her right to call witnesses on her behalf. This contention rests solely on the circuit court's treatment of defense witness Kenneth Iman. The petitioner maintains that Iman sought to testify both as a lay and expert witness. The trial court refused to permit Iman to testify. The witness holds an associate degree in mental health (a two-year course of study) and the following proffer was made by the petitioner's counsel:

MR. MILES: The proffer is two-fold: number one, I offer him as an expert in the field of mental—as a practical mental hygienist; as an expert with regards to that for the purpose of showing that the State's case, even taking everything as being true, in terms of his field of expertise, has scientific value; number two, I feel I have more than qualified him as an expert to do that, in terms of giving an expert opinion of scientific value of the performances as indicated by the State's case only; number three, of course, the cases deal with this, and I'll point out, secondarily, do not require the person be

expert at all. They can give an opinion based on being offensive.

Tr. 1 at 204–205.

Later, counsel for the petitioner restated the purposes for which Iman's testimony was offered:

> MR. MILES: Before I renew my motion, your Honor, I want to again present that I tried to present the testimony of Mr. Iman. The Court ruled I couldn't.
>
> Now, obviously, the reason I didn't question him further was because of the Court's ruling. It was my desire to have him testify on the scientific value of the performance and standards of the community would be violated or lacking with regards to the statute.

Transcript of May 16, 1979 ("Tr. 2") at 3.

■ Maryland evidentiary law quite clearly permits the exclusion of expert testimony on subjects that are comprehensible by a jury of average intelligence. *Patterson v. City of Baltimore*, 130 Md. 645, 101 A. 589 (1917). As the Supreme Court, in *Paris, supra*, has held that expert testimony is not necessary in an obscenity case, the circuit court's exclusion of Iman's expert testimony was proper.

The petitioner contends here that Iman was also prepared to give lay testimony about the appropriate community standard. The prosecuting attorney noted an obvious defect in Iman's proposed testimony: "He has no experience, from what I hear from any of the people in Harford County, attending a particular place of business." Tr. 1 at 206.

Such lay opinion testimony about the appropriate community standard was properly excluded. *See Williams v. New York, P. & N. R. Co.*, 153 Md. 102, 137 A. 506 (1927) (testimony of abstract character, of which jury is probably equally as well informed as witness, may be excluded).

It should be noted that the circuit court permitted Ms. Avery to put on a factual witness whose testimony contradicted the state's witnesses. Thus, the jury was presented with opposing testimony upon which the ultimate determination of obscenity *vel non* could be reached.

## F. *The Propriety of Ms. Avery's Sentence.*

■ Finally, Ms. Avery contends that she was improperly sentenced by the state circuit court because that court merely affirmed the sentence imposed by the state district court. The rationale of her argument is that a *de novo* circuit court disposition must differ from that imposed at the district court level. To state her position is to demonstrate its flaws. It is clear that she was indeed resentenced and the sentencing judge stated an acceptable reason for his sentence:

> THE COURT: Do you have anything to say before I impose sentence?
>
> MS. AVERY: No. I don't.
>
> THE COURT: All right. Well, I'm going to impose the same sentence that has been imposed at the District Court, which I believe is ten days incarceration in the Harford County Detention Center, plus a hundred dollars fine, plus costs.

> \* \* \* \* \* \*

> THE COURT: Now, I'm imposing this sentence—I fully recognize that the crime for which you've been convicted is not a particularly serious one, and I have no information to the effect that you're a vicious or bad person but—and some people might contend that this was what's known as a victimless crime, if there is such a thing as victimless crime, but I feel that the people of Aberdeen have the right, within constitutional limits, to have some control over the tone of the community in which they live, and this includes, again within constitutional limits, the right to regulate the type of entertainment that takes place there. And in a small town like Aberdeen, you can't set aside a particular area for a particular type of entertainment, like the Baltimore block or New York City and so forth. So I feel that the town is within their rights in setting this sort of a penalty, whether one agrees with it or not, and that those rights should be taken seriously.

So consequently, I'm imposing a jail sentence of ten days.

Tr. 2 at 61–62.

■ The general rule governing this Court's review of a sentence imposed by a state court is clear: "the federal courts have no right to review any sentence of a state court which does not exceed the statutory maximum sentence which may be imposed under the laws of the state." *Stevens v. Warden, Maryland Penitentiary*, 382 F.2d 429, 433 (4th Cir. 1967), (even a shocking sentence is constitutionally unassailable if sentence does not exceed statutory maximum, *cert. denied*, 390 U.S. 1031, 88 S.Ct. 1423, 20 L.Ed.2d 288 (1968).

As the record reveals an ascertainable, and lawful, exercise of the circuit court's discretion, it is not a basis for habeas corpus relief. *See United States v. Wilson*, 450 F.2d 495, 498 (4th Cir. 1974).

### III. CONCLUSION

As the petitioner raises no constitutionally meritorious grounds for habeas corpus relief, the petition will be denied.

Accordingly, it is this 12th day of November, 1980, by the United States District Court for the District of Maryland,

SO ORDERED.