■ In the Matter of EAGLE OPEN KITCHEN, INC., Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. — Determination of respondent, New York State Liquor Authority (Authority), dated December 4, 1981, finding petitioner Eagle Open Kitchen, Inc. (Eagle) guilty of two violations of the Alcoholic Beverage Control Law, and imposing a penalty of cancellation of petitioner's liquor license and a $1,000 bond forfeiture modified, on the law and facts and in the exercise of discretion, without costs, to the extent of annulling the penalty imposed and remanding the matter to the Authority for reconsideration of the penalty, which shall in no event exceed 60 days' suspension and forfeiture of the $1,000 bond. Petitioner has owned and operated the Eagle Open Kitchen bar for over 50 years and one man, John Modica, has been the president and sole stockholder of petitioner for more than 11 years. During this period only one charge has been brought against petitioner and that was not sustained. Respondent Authority instituted this proceeding to revoke petitioner's license on two charges: (1) that petitioner violated subdivision 6 of section 106 of the Alcoholic Beverage Control Law in that it allowed the premises to become disorderly on February 23, 1980 by suffering or permitting a lewd and indecent show therein; (2) that the petitioner violated subdivision 4 of section 100 of the Alcoholic Beverage Control Law in that it maintained and operated more than one stand-up bar on the premises. At the commencement of the hearing on these charges, petitioner amended its plea from "not guilty" to "no contest" with reference to Charge No. 1. When petitioner pleaded "no contest" to Charge No. 1, the charge was deemed sustained (9 NYCRR 54.2 [a]). We are presented therefore not with the question of whether there was substantial evidence to support the charge but whether the punishment imposed was so disproportionate as to be shocking to one's sense of fairness. (See *Matter of Pell v Board of Educ.*, 34 NY2d 222.) In pleading "no contest" however, Mr. Modica, the licensee, explained in mitigation that a video cassette movie showing explicit sexual acts between adult males was exhibited "*without prior knowledge of the contents by him.*" (Emphasis added.) The licensee testified that he was not present the first two nights when the video cassettes were shown and on the third night when he first saw them, he had them stopped. Upon argument the counsel for the Authority conceded that a license had never been revoked for suffering or permitting premises to become disorderly on the basis of one single, isolated, reported occurrence of such a video tape. In view of the past good record of the licensee and his promptness in ending the disorderly condition, the severe penalty imposed cannot be justified. The evidence concerning the second charge showed that the so-called second bar was a simple structure without a cash register or other receptacle for the receipt of money, dispensing or cleaning equipment or shelves or plumbing attachments. The licensee explained the structure as being simply a place to lay coats. Upon argument, the Authority conceded it would not have revoked petitioner's license solely upon this second charge. The sparse case law seems to support this assessment. (See *Matter of Hart's Hill Inn v State Liq. Auth.*, 49 AD2d 1005.) Concur — Sandler, Bloom and Fein, JJ.

Kupferman, J. P., and Asch, J., concur in a memorandum by Asch, J., as follows: I concur in the result reached by my colleagues and the reasoning used to reach that result. I would, however, add some observations. This case

presents what seems to be but another incongruous variation in "the seemingly bottomless problem of our topless dancing statute." (Siegel, NY L Dig, No. 267, March, 1982.) The statute (Alcohol Beverage Control Law, § 106, subd 6-a) barred topless dancing on premises that serve alcohol. The Court of Appeals, after the issue had percolated a number of times through the strata of judicial authority, struck down the statute. *Bellanca v New York State Liq. Auth.* (54 NY2d 228), held that such entertainment is protected under the free expression portion of the New York State Constitution (art I, § 8). As Professor David D. Siegel has observed (NY L Dig, *op. cit.*): "Wine, women and song thus remain joint tenants in New York." It is difficult to believe, if this is the state of the law, that live performances of a sexual nature are protected, but a taped sexual performance, on the limited basis as established in this case, is the ground for the revocation of a license. An additional incongruity is that we are dealing here with filmed performance rather than live entertainment. The Supreme Court of the United States, in its wisdom, has directed that whether or not a film is obscene depends on "contemporary community standards". (See *Jenkins v Georgia*, 418 US 153, 157; *Miller v California*, 413 US 15.) Granted, the State of New York has broad powers over the sale of liquor within its borders. (See *Bellanca v New York State Liq. Auth., supra.*) It seems incredible however that the Constitution has different application on Eighth Avenue, where this type of movie is continuously shown with no discernible reaction from agencies of government, than three blocks west on Eleventh Avenue where a limited showing leads to such a Draconian response. There may well be some other basis for the authority taking the action it did, but if so, such does not appear on the record before us.