416 S.E.2d 262

**Judy BUTLER, d/b/a Butler Video, Sue Sharp and Sandra Alderman d/b/a S & S Video, Roger Groves and Miranda Groves, d/b/a Richwood Electronics, Plaintiffs Below, Appellants,**

v.

**Gregory TUCKER, Prosecuting Attorney for Nicholas County, Thomas Blankenship, Sheriff of Nicholas County, Garry Evans, Chief of Police for the City of Summersville, et al., Defendants Below, Appellees.**

No. 19998.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided April 2, 1992.

Rehearing Denied May 13, 1992.

Larry E. Losch, Summersville, for appellants.

Harley E. Stollings, Breckinridge, Davis, Null & Sproles, Summersville, for appellees.

BROTHERTON, Justice:

The appellants, Judy Butler, et al., challenge the constitutionality of an anti-pornography ordinance restricting the sale and display of obscene materials which was adopted by the Nicholas County Commission on November 9, 1989, pursuant to W.Va.Code § 7-1-4.

This test of the ordinance was initiated on February 5, 1990, when Ellis Frank Hartless and Phillip Light rented an X-rated videotape entitled "Stolen Kisses" from Butler Video, a rental business located in Summersville, West Virginia. Hart-

less and Light took the videotape to the Nicholas County Sheriff and demanded prosecution pursuant to the anti-pornography ordinance.

The videotape was viewed by Nicholas County Magistrate Phillip G. Conley, Chief Deputy Bobby Gordon, Frank Hartless, and Phillip Light. Upon concluding that there was probable cause to find that the videotape was obscene, the magistrate issued a search warrant which authorized the sheriff's department to search Butler Video and seize any other videotapes which were suspected of being obscene. Approximately sixty-five to seventy X-rated videotapes were seized.

There have been no arrests, indictments, or informations filed charging any of the appellants in this case with any criminal offense under the Nicholas County Anti–Pornography Ordinance. All of the videotapes which were seized from Butler Video have since been returned, although the tape which was initially rented by Hartless and Light remains in the possession of the State.

The appellants subsequently filed a petition for declaratory judgment, writ of prohibition, and writ of mandamus in the Circuit Court of Nicholas County, challenging the seizure of the videotapes, as well as the constitutionality and enforceability of the Nicholas County Commission's enactment of the anti-pornography ordinance. In an order dated August 9, 1990, the court denied all of the appellants' requests for relief. The appellants now appeal from this order.

The appellant's constitutional claim is centered on two arguments: (1) that the definition of obscenity found in W.Va.Code § 7–1–4(b) is too vague; and (2) that the statute does not prescribe a statewide enactment, but allows each county to decide whether to adopt a local pornography statute. In support of the latter claim, the appellant points out that W.Va.Code § 7–1–4(b) allows a county to pick what portion of the state ordinance it will adopt.[1]

With regard to the argument that W.Va. Code § 7–1–4(b) is too vague, all parties agree that the controlling test was set forth by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Material which meets this standard is considered obscene, thus it is not afforded the First Amendment freedoms of speech or press protections:

(a) [W]hether "the average person, applying contemporary community standards" would find that the work, taken

---

1. The relevant portion of W.Va.Code § 7–1–4 reads:

(a) In addition to all other powers which county commissions now possess by law, county commissions may adopt the ordinance provided in subsection (b) of this section.

A county commission when adopting this ordinance may delete therefrom such portions of paragraph (A), subdivision (4), subsection (b) of this section that it deems appropriate.

(b) The ordinance which county commissions may adopt pursuant to the power granted them under subsection (a) of this section shall be:

Section 1. Definitions.

For purposes of this ordinance:

(1) "Knowingly" means to have knowledge of or to be aware of the content or character of obscene matter.

(2) "Matter" means any book, magazine, newspaper or other printed or written material, or any picture, drawing or photograph, motion picture, or other visual representation, or live conduct, or any recording, transcription or mechanical, chemical or electrical re-

production, or any other articles, equipment, machines or materials.

(3) "Individual" means any human being regardless of age.

(4) "Obscene" means matter which the average individual applying contemporary community standards would find (i) taken as a whole, appeals to the prurient interest; (ii) depicts or describes in a patently offensive way ultimate sexual acts, normal or perverted, actual or simulated; and (iii) the matter, taken as a whole, lacks serious literary, artistic, political or scientific value, and which either:

(A) Depicts or describes patently offensive representation of masturbation, excretory functions, lewd exhibition of the genitals, sodomy, fellatio, cunnilingus, bestiality, sadism, masochism; or

(B) Depicts or describes nudity or sexual acts of persons, male or female, below the age of eighteen years.

The Nicholas County obscenity ordinance adopted the language of W.Va.Code § 7–1–4(b) verbatim.

as a whole, appeals to the prurient interest, *Kois v. Wisconsin,* [408 U.S. 229] at 230 [92 S.Ct. 2245, 2246, 33 L.Ed.2d 312, 315 (1972)], *quoting Roth v. United States,* [354 U.S. 476] at 489 [77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498, 1509 (1957)]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the *"utterly* without redeeming social value" test of *Memoirs v. Massachusetts,* 383 U.S. [413] at 419 [86 S.Ct. 975, 978, 16 L.Ed.2d 1, 6 (1966)]. 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.[2]

The Supreme Court then gave several examples of what a state statute could define as obscene for regulation under the general standard announced in its opinion:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

413 U.S. at 25, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.

Since *Miller v. California,* the Supreme Court has taken only one opportunity to clarify its standard. In *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987), the Supreme Court concluded that the third element of the *Miller* standard, i.e., "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value," is not to be judged by a community standard. After reviewing *Miller* and its more recent opinion of *Smith v.*

*United States,* 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), the Supreme Court concluded in *Pope* that:

The proper inquiry is not whether an ordinary member of any given community would find serious literary, artistic, political, or scientific value in allegedly obscene material, but whether a reasonable person would find such value in the material, taken as a whole.

481 U.S. at 500–01, 107 S.Ct. at 1921, 95 L.Ed.2d at 445 (footnote omitted). While *Pope v. Illinois* is thought of as a clarification of *Miller v. California,* it actually appears to have rejected the community standard test discussed in *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974).

*Jenkins* is notable for sanctioning the right of an appellate court to make an independent review of the allegedly obscene material to determine if it passes constitutional muster. When conducting this review, the court in *Jenkins* reiterated *Miller's* holding that " 'no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct[.]' " 418 U.S. at 160, 94 S.Ct. at 2755, 41 L.Ed.2d at 650, *quoting Miller v. California,* 413 U.S. at 27, 93 S.Ct. at 2616, 37 L.Ed.2d at 432. Finally, *Jenkins* went on to state that the list of examples included in *Miller* to elucidate its definition of obscenity, while not "an exhaustive catalog ... was certainly intended to fix substantive constitutional limitations, deriving from the First Amendment, on the type of material subject to such a determination." 418 U.S. at 160–61, 94 S.Ct. at 2755, 41 L.Ed.2d at 650.

These principles guide us in our determination of whether W.Va.Code § 7–1–4

---

**2.** Prior to *Miller v. California, supra,* the test to determine whether material was obscene was found in *Roth v. United States,* 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498, 1509 (1957), which provided: "Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." (Footnotes omitted). In the plurality opinion of *Memoirs v. Massachusetts,* 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1, 5–6 (1966), after

referring to the *Roth* standard, the Supreme Court added:

... [T]hree elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.

meets the *Miller* constitutional standard. We conclude that it is constitutional because it embodies not only the general obscenity test authorized in *Miller v. California, supra,* but also incorporates in paragraphs (A) and (B) of subsection (b)(4), the specific "plain examples" of obscenity set out by the Supreme Court in *Miller.* The Nicholas County ordinance tracks the language of W.Va.Code § 7–1–4(b). Thus, both the statute and the Nicholas County ordinance are facially constitutional and do not violate the First Amendment to the United States Constitution.[3]

■ The appellant's alternative constitutional claim attacks the structure of W.Va. Code § 7–1–4, and argues that it is unconstitutional because it enables county commissions to adopt different obscenity ordinances. We conclude that when properly analyzed, this statute gives county commissions a very limited power to alter the statutory scheme, which does not affect its constitutionality.

When we analyze W.Va.Code § 7–1–4, several points are clear. First, the authorization of power to adopt an obscenity ordinance by a county commission is discretionary since subsection (a) states that "county commissions *may* adopt the ordinance provided...."[4] Second, if a county commission decides to adopt an obscenity ordinance, it is required to follow the form set out in W.Va.Code § 7–1–4. This requirement is mandated by the language set out in the first sentence of W.Va.Code § 7–1–4(b), which states: "The ordinance which county commissions may adopt pursuant to the power granted them under subsection (a) of this section *shall be:* ..."[5] (Emphasis added).

Third, this mandatory language embodies the general obscenity definition contained in W.Va.Code, 7–1–4(b)(4).[6] At the end of this general language defining obscenity, the phrase "and which either" is used, followed by paragraph (A), which lists specific examples of patently offensive acts, and paragraph (B), which addresses child pornography."[7]

Finally, by virtue of the following language contained in W.Va.Code § 7–1–4(a),

**3.** The circuit court was not asked to determine whether the rented videotape seized by the authorities was in fact obscene. Consequently, we make no judgment on this point. We also note that the appellant does not argue that our state constitutional analogue to the First Amendment contained in Article III, Section 7 of the West Virginia Constitution is more restrictive:

No law abridging the freedom of speech, or of the press, shall be passed; but the legislature may by suitable penalties, restrain the publication or sale of obscene books, papers, or pictures, and provide for the punishment of libel, and defamation of character, and for the recovery, in civil actions, by the aggrieved party, of suitable damages for such libel, or defamation.

The appellant further argues that the obscenity ordinance violates other provisions of our Constitution, i.e., Article III, Section 1 (enjoyment of life and liberty); Article III, Section 9 (taking of private property); Article III, Section 10 (due process). We find these claims to be without merit.

**4.** We have customarily held that the word "may" is permissive and not mandatory. *See, e.g., Weimer–Godwin v. Board of Educ.,* 179 W.Va. 423, 369 S.E.2d 726 (1988); *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 359 S.E.2d 124 (1987); *Gebr. Eickhoff Maschinenfabrik und Eisengieberei v. Starcher,* 174 W.Va. 618, 328 S.E.2d 492

(1985); *Hodge v. Ginsberg,* 172 W.Va. 17, 303 S.E.2d 245 (1983).

**5.** From this point on, the statute sets out a detailed ordinance with the term "ordinance" being used throughout. Of particular importance is the term "shall be" in the first sentence of subsection 4(b). The term "shall" has traditionally been construed as a mandatory provision in the absence of language showing a contrary intent. Syllabus Point 2, *Woodring v. Whyte,* 161 W.Va. 262, 242 S.E.2d 238 (1978).

**6.** The general definition of obscenity in W.Va. Code § 7–1–4(b)(4) provides:

(4) "Obscene" means matter which the average individual applying contemporary community standards would find (i) taken as a whole, appeals to the prurient interest; (ii) depicts or describes in a patently offensive way ultimate sexual acts, normal or perverted, actual or simulated; and (iii) the matter, taken as a whole, lacks serious literary, artistic, political or scientific value, *and which either:* ....
(Emphasis added).

**7.** Paragraphs (A) and (B) of W.Va.Code § 7–1–4(b)(4) state:

(A) Depicts or describes patently offensive representation of masturbation, excretory

if a county commission decides to enact an obscenity ordinance and adopt paragraph (A), it can delete such portions of this paragraph's language as it deems appropriate: "A county commission when adopting this ordinance may delete therefrom such portions of paragraph (A), subdivision (4), subsection (b) of this section that it deems appropriate." [8]

We find that the limited power given to county commissions to adopt the obscenity ordinance in W.Va.Code § 7–1–4(b) and to delete some of the language in paragraph (A) does not render W.Va.Code § 7–1–4 unconstitutional. The statute's requirement mandating the adoption of the general obscenity definition found in W.Va.Code § 7–1–4(b)(4)(A) and (B) sufficiently meets the constitutional obscenity standard announced in *Miller v. California, supra,* in spite of the power given to county commissions to delete language from § 7–1–4(b)(4)(A). *See also Ward v. Illinois,* 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977); *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

We have already found the Nicholas County ordinance constitutional. As noted above, the Nicholas County Commission adopted the precise language of W.Va.Code § 7–1–4(b). Whether other county commission's obscenity ordinances are valid is a determination that we decline to make without having their exact language.

Next, the appellants argue that W.Va.Code § 7–1–4 is unconstitutional because it unlawfully delegates rule making authority to county commissions, in violation of the constitutional doctrine of the separation of powers. The appellants contend that by enacting the "enabling statute," W.Va.Code § 7–1–4, the Legislature simply "passed the buck" to county commissions and permitted them to enact their own obscenity laws.

functions, lewd exhibition of the genitals, sodomy, fellatio, cunnilingus, bestiality, sadism, masochism; or
(B) Depicts or describes nudity or sexual acts of persons, male or female, below the age of eighteen years.

**8.** We find W.Va.Code § 7–1–4 to be sufficiently clear and unambiguous; thus, we follow the rule contained in syllabus point 2 of *State ex rel.*

The county commission is the chief law enforcement agency of a county. *Hockman v. County Court,* 138 W.Va. 132, 75 S.E.2d 82 (1953). Article 9, Section 11 of the West Virginia Constitution refers to the general powers which are granted to county commissions, and states that county commissions "may exercise such other powers, and perform such other duties, not of a judicial nature, as may be prescribed by law." Although West Virginia does not have a law proscribing various activities related to pornography, W.Va.Code § 7–1–4(a) (1990) provides that "[i]n addition to all other powers which county commissions now possess by law, county commissions may enact the ordinance provided in subsection (b) of this section." That ordinance restricts activities in relation to obscene material and sets forth penalties for violation of such restrictions.

█ Contrary to the appellant's assertions, we find no unconstitutional delegation of legislative power in this statute. The county commission is a creature of statute and as such, it "can only do only such things as are authorized by law, and in the mode prescribed." Syl. pt. 5, *Goshorn's Ex'rs v. County Court,* 42 W.Va. 735, 26 S.E. 452 (1896); *Barbor v. County Court,* 85 W.Va. 359, 101 S.E. 721, 722 (1920). In *State ex rel. Dingess v. Scaggs,* 156 W.Va. 588, 195 S.E.2d 724, 726 (1973), we stated that a county commission is the central governing body of the county, in which "[t]he constitution and laws of this State have committed ... certain legislative, executive and judicial powers directly connected with the local affairs of the county."

The Legislature's "particularly broad" constitutional right to delegate its powers in matters of public health, morals, safety, and welfare were noted by this Court in *Underwood v. Silverstein,* 167 W.Va. 121, 278 S.E.2d 886 (1981): "'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syllabus Point 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968)." *See also Kosegi v. Pugliese,* 185 W.Va. 384, 407 S.E.2d 388 (1991); *Vandergriff v. Workers' Compensation Comm'r,* 183 W.Va. 148, 394 S.E.2d 747 (1990).

*State v. Grinstead,* 157 W.Va. 1001, 206 S.E.2d 912, 918 (1974):

> This Court has passed upon and recognized the right of the Legislature to delegate its police powers to regulate certain matters to boards and commissions under standards proscribed in the statute or inherent in the subject matter, and wider latitude is given to such delegation of power where public health, morals, safety and welfare are involved.

Citing *State ex rel. Scott v. Conaty,* 155 W.Va. 718, 187 S.E.2d 119, 122 (1972).

However, the appellants rely upon *Grinstead* in support of their proposition that the Legislature cannot delegate its authority to enact laws to an agency which is a unit of the executive branch of state government. They also argue that the ordinance in § 7–1–4(b) is an incomplete law and, therefore, unconstitutional according to *Grinstead.*

█ We point out first that a county commission is not considered to be an agency or unit of the executive branch of government. In *Grinstead,* we held that the Legislature could not, "under the guise of colorable delegation, permit the Board of Pharmacy to adopt a federal law which has not been given prior approval by the Legislature." *Id.* at syl. pt. 2. Further, we stated that:

> [W]hile a statute may be sufficiently definite in specifying criminal acts so as to provide notice of proscribed conduct, it may be invalid as incomplete if it is left to a body other than the Legislature to determine without benefit of legislative standards what shall and shall not be an infringement of the law.

*Id.* 157 W.Va. at 1013, 206 S.E.2d at 918. Thus, at syllabus point 4 of *Grinstead,* we stated that "[t]he constitutional prerequisite to a valid statute is that the law shall be complete when enacted."

█ In this case, the Legislature has already created the ordinance in question.

However, rather than making it a general statute applicable to the entire State, the Legislature left it to each county to adopt such legislation if it desired to do so. This grant of discretion to county commissions does not render the ordinance an incomplete law. Should individual county commissions choose to adopt it, the ordinance can never be made more restrictive than the form already delineated by the Legislature in W.Va.Code § 7–1–4(b). The decision as to whether or not to adopt the ordinance, and the determination of which specific acts are to be considered obscene by particular community standards, are all that is left to the discretion of the individual county commissions. Such action by a county commission does not constitute a usurpation of the legislative function.[9]

The appellants also object because the county commission did not publish or otherwise notify the citizens of its intent to enact the ordinance. The appellants argue that the fact that W.Va.Code § 7–1–4 does not require notice and publication is further evidence that it is unconstitutional, because notice and publication are required prior to the passage of other ordinances. As examples, the appellants cite zoning ordinances and road and school levies.

The minutes of the Nicholas County Commission's October 28, 1989, meeting, included in the record as Respondent's Exhibit # 1, state, in part:

> President Hartley read the first reading of the Nicholas County Anti–Pornography ordinance.
>
> Mr. Hartley stated that according to our Prosecutor, said Ordinance must be read twice at a regular scheduled meeting of the Commission, followed by a public hearing. It was noted for the record that the second reading will be held on Wednesday, November 8 at 10:00 a.m.

The minutes from the Commission's November 8, 1989, meeting (Respondent's Exhibit # 2), contain the following:

> this State has had delegated to it a part of the police power of the State, to be exercised, as a general rule, within its borders, including the power to preserve order and assist in enforcing the laws of the State." *Id.*

---

9. *See generally, State v. Sims,* 132 W.Va. 826, 54 S.E.2d 729 (1949), in which the Court held that it was within the State's inherent authority to delegate its "police power" to counties and municipalities. *Id.,* 132 W.Va. at 835, 54 S.E.2d at 735. "Unquestionably, every municipality in

President Hartley read the second reading of the Nicholas County Anti–Pornography Ordinance at the regular scheduled meeting of the Commission.

Commissioner McClung moved to accept the second reading of the Anti–Pornography Ordinance. Commissioner Paxton seconded the motion. Motion passed unanimously.

A public hearing was held at 10:00 a.m. in the office of the Nicholas County Commission to hear input on the Anti–Pornography Ordinance.

Present were: Mr. George Kallai and Mr. Frank Harless. Following the public hearing Commissioner Paxton moved to accept the ordinance.

Commissioner McClung seconded the motion. Motion passed unanimously.

(Ordinance attached to be recorded as a part of the minutes.)

These passages from the minutes indicate that, in at least some respects, the Nicholas County Commission followed traditional procedures when it enacted the ordinance. However, the original enabling legislation did not require notice and publication in this instance, and we cannot justify declaring the ordinance invalid on this basis. The specificity of the ordinance provides individuals with fair warning as to exactly what types of materials are considered obscene and, therefore, are prohibited. If the Legislature had found itself capable of passing this very same anti-pornography legislation and giving it immediate statewide application, the citizens would have had no greater right to notice or publication prior to its enactment.

As we noted above, the Legislature provided county commissions with the ordinance in its most restrictive and, for all intents and purposes, final form. County commissions are left with the discretion only to decide whether to delete certain acts from the general definition of obscenity. As elected representatives of its citizenry, a county commission should certainly be capable of making an informed decision, relative to "contemporary community standards," as to what should be included within the county's definition of obscenity. If the citizens disagree, then the commissioners will undoubtedly be held to answer for their displeasure at the next election.

Although we note from the minutes that the public hearing on this matter was sparsely attended, we have no other indication as to the degree of involvement of any opponents to this ordinance. However, it was apparently as a result of petitions containing approximately 1,500 signatures of proponents of the ordinance that it was ultimately enacted. Certainly, it cannot be said that there was no community involvement in this process, or that the community was totally unaware of the possibility that such an ordinance would be enacted.

A final point which merits only brief attention is the appellants' contention that W.Va.Code § 7–1–4 unconstitutionally deprives the magistrate court of exclusive jurisdiction in misdemeanor cases. Specifically, the appellants argue that because no one can be prosecuted for an offense under the obscenity ordinance in W.Va.Code § 7–1–4 except by indictment or information, magistrate courts are excluded from participation. Therefore, the appellants maintain that the Legislature is "regulating" practice before magistrate courts, in violation of Article 6, Section 39 of the West Virginia Constitution.[10] However, there simply is no basis for the appellants' argument on this point.

West Virginia Code § 51–2–2 gives the circuit courts of this State original and general jurisdiction over "all crimes and misdemeanors" except "in cases confined exclusively by the Constitution to some other tribunal." In syllabus point 3 of *State ex rel. Burdette v. Scott*, 163 W.Va. 705, 709, 259 S.E.2d 626, 629 (1979), this Court stated that:

> Even though *West Virginia Code*, 50–5–7 (1976), gives exclusive jurisdiction to a magistrate court once the defendant is charged by warrant in that court with an offense within its jurisdiction, this does not mean that the circuit court has no

---

**10.** Article 6, Section 39 of the West Virginia Constitution states, in part, that "[t]he legislature shall not pass local or special laws in any of the following enumerated cases; that is to say, for ... [r]egulating the practice in courts of justice; ..."

initial jurisdiction over misdemeanor offenses. Concurrent jurisdiction still exists. Article VIII, Section 6, of the West Virginia Constitution, and *W.Va. Code*, 51–2–2 (1978), give circuit courts jurisdiction of "all crimes and misdemeanors."

We then noted in syllabus point 4 that, "[u]nder W.Va.Code, 62–1–10 (1965), a circuit judge has the power to issue warrants and thereby can initially assume jurisdiction. Moreover, the prosecutor can initiate any criminal proceeding through a grand jury indictment. W.Va.Code, 62–2–1 (1931)." "Either avenue makes the circuit court an available forum for the trial of misdemeanor offenses *without the necessity of utilizing the magistrate court." Id.*, 163 W.Va. at 709, 259 S.E.2d at 630 (emphasis added). West Virginia Code § 7–1–4 does not unconstitutionally deprive the magistrate courts of exclusive jurisdiction in misdemeanor cases, because the circuit court is often a viable alternative to magistrate court.

For the foregoing reasons, we conclude that W.Va.Code § 7–1–4 (1990), which authorizes county commissions to enact the anti-pornography ordinance contained therein, is not an unconstitutional delegation of legislative power. The August 9, 1990, order of the Circuit Court of Nicholas County is hereby affirmed.

Affirmed.