**WEST VIRGINIA PRIDE, INC. d/b/a The Lion's Den, et al., Plaintiffs,**

v.

**WOOD COUNTY, WEST VIRGINIA, et al., Defendants.**

Civ. A. No. 6:92–803.

United States District Court, S.D. West Virginia, Parkersburg Division.

Jan. 14, 1993.

John A. Kessler, Hunt & Wilson, Charleston, WV, J. Michael Murray, Jeremy A. Rosenbaum, Berkman, Gordon, Murray & Palda, Cleveland, OH, for plaintiffs.

Jeffrey B. Reed, Pros. Atty., Michele Rusen, Asst. Pros. Atty., Parkersburg, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Plaintiffs' motions for summary judgment and Defendants' motion to dismiss. Since matters outside of the pleadings will be considered, the Court treats the filings as cross motions for summary judgment. The Court consolidated this action on October 5, 1992.[1] Counsel represent that this matter is ripe for adjudication. The Court GRANTS Plaintiffs' respective motions and DENIES Defendants' motion, with exception to the dismissal of certain parties.

Under *Rule* 56(e), Federal Rules of Civil Procedure, summary judgment is proper only:

> "[I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

A principal purpose of summary judgment is to isolate and dispose of meritless litigation. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91

---

1. Plaintiff West Virginia Pride seeks declaratory and injunctive relief against Defendants Wood County, Prosecuting Attorney Jeffrey Reed, and Sheriff Steve Greiner. The Plaintiffs in the second action seek the same relief but name Mr. Reed and the individual county commissioners as Defendants.

L.Ed.2d 265 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

## I. FACTS

The parties stipulate to the material facts of this case. *See* J. Stip. of Parties (hereinafter "JSP"). The West Virginia Legislature enacted a law authorizing all county commissions to adopt a model anti-obscenity ordinance (hereinafter "Ordinance"). *W.Va.Code* § 7–1–4 (1990) (hereinafter "Statute" or "§ 7–1–4"). The Statute provides the text of the Ordinance which the commissions might adopt. *Id.* at 7–1–4(b). The Legislature authorized only minor modifications by the counties choosing to legislate on this subject matter. *Id.* at 7–1–4(a).

On July 27, 1992, the Wood County Commission adopted the Ordinance, which mirrors the permissible language of the Statute. Defendants stipulate that materials carried by three of the four Plaintiff bookstores fall within the Ordinance's definition of "obscene." JSP at ¶ 3. Further, Defendants Greiner and Reed state they

> "—unless restrained or enjoined by this Court, or unless Plaintiff Businesses cease disseminating materials defendants would contend fall within the definition of "obscene" as set forth in the Ordinance—will in all likelihood investigate Plaintiff Businesses with a view toward initiating criminal prosecutions against Plaintiff Businesses for the dissemina-

tion of materials allegedly proscribed under the Ordinance."

JSP at ¶ 5; *see* JSP at ¶ 6.

The Wood County Ordinance was effective August 31, 1992. However, this Court entered a Temporary Restraining Order on August 28, 1992, prohibiting the Ordinance's enforcement. The parties stipulated to the entry of a preliminary injunction pending final adjudication.

Plaintiffs, via 42 U.S.C. § 1983, allege the Ordinance and Statute violate the First and Fourteenth Amendments of the United States Constitution.

## II. STANDING

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases and controversies." *See, e.g., Mobil Oil Corp. v. Attorney General of Com. of Va.*, 940 F.2d 73, 75 (4th Cir.1991). A necessary element of a case or controversy is a plaintiff's standing to sue. *Id.* A Plaintiff must establish an injury in fact: "[a] threatened or actual injury resulting from the putatively illegal action." *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 392, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988) (citations omitted). The question is whether a party has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *American Booksellers Ass'n, Inc., v. Com. of Va.*, 802 F.2d 691, 693 (4th Cir.1986) (citations omitted), *vacated on other grounds*, 488 U.S. 905, 109 S.Ct. 254, 102 L.Ed.2d 243 (1988); John E. Nowak, et al., *Constitutional Law* 81 (2d ed. 1983).

However, in First Amendment statutory challenges "courts justifiably often lessen standing requirements." *American Booksellers*, 802 F.2d at 694 n. 4; *see also Secretary of State of Maryland v. J.H. Munson Co., Inc.*, 467 U.S. 947, 956, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984) ("when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in

having the statute challenged"). The standing requirement is met, *inter alia,* when plaintiffs are forced "to take significant and costly compliance measures or risk criminal prosecution." *American Booksellers,* 484 U.S. at 392, 108 S.Ct. at 642. Further, while a party may usually only seek redress for its own injury, third-party standing is often permitted in First Amendment litigation. Plaintiffs may assert the rights of others "because of a judicial ... assumption that the statute's very existence may cause others not before the court to refrain from" protected speech. *Id.* at 392–93, 108 S.Ct. at 643 (quoting *Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 956–57, 104 S.Ct. 2839, 2846–47, 81 L.Ed.2d 786 (1984) and *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)).

■ After previously stipulating otherwise, JSP at ¶¶ 3–6, Defendants belatedly challenge Plaintiffs' standing under § 1983.[2] Defendants essentially argue that since the Ordinance has yet to go into effect, no deprivation of constitutional rights has occurred. Defendants also assert that Plaintiffs can only offer mere "conjecture and speculation" as to the manner of the Ordinance's enforcement.

Defendants stipulate, however, that at least three Plaintiff bookstores sell "obscene" materials and would likely be prosecuted unless these Plaintiffs remove the offending material from their shelves—an action which Plaintiffs allege would result in economic harm. *See* Pl.'s Compl. at ¶ 18; Pls.' Compl. at 3–4. The assertion of a lack of injury due to current nonenforcement of the Ordinance is equally meritless. It was resolved previously by the most authoritative court:

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. *Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.*

*American Booksellers,* 484 U.S. at 393, 108 S.Ct. at 643 (emphasis added) (cited in *Mobil Oil,* 940 F.2d at 76).

Considering Plaintiffs' Hobson's choice of either suffering likely prosecution or economic hardship, the Court concludes they have demonstrated standing adequately.[3]

The Court also addresses the standing of Plaintiff Boggs. Who alleges she is

> a reader of books, a listener to records, and a viewer of movies.... threatened with denial of access to the materials which interest her because the ordinance is so vague that distributors are likely to withdraw materials which are constitutionally protected.

Pls.' Compl. at 3.

■ Defendants Reed and Greiner virtually promised to prosecute the Plaintiff bookstores unless enjoined. Should this occur, or if the threat of prosecution leads the stores to stop selling the proscribed material, Ms. Boggs would no longer have reasonable access to her choice of books, records, and movies, all of which gives her a personal stake in the litigation. The Or-

**2.** Defendants admit they acted under color of state law. Def.'s Answer to Pl.'s Compl. at ¶ 8. Apparently, Defendants also concede that the challenged action constitutes the required custom or policy of Wood County. It would be difficult to argue otherwise. *See Monnell v. New York City Dep't of Social Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978) ("Local government bodies, therefore, can be sued directly under § 1983 for ... injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted ... by that body's officers").

**3.** Plaintiff West Virginia Pride, at least, would also have third-party standing. *Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 956–57, 104 S.Ct. 2839, 2846–47, 81 L.Ed.2d 786 (1984); *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Plaintiff alleges that enforcement of the Ordinance would cause "irreparable harm and injury to plaintiff ... *and [its] customers.*"

dinance's putative burden on constitutionally protected speech additionally amounts to " '[a] threatened or actual injury.' " *American Booksellers,* 484 U.S. at 392, 108 S.Ct. at 642 (citation omitted). The Court concludes Plaintiff Boggs also has standing.

### III. IMMUNITY

■ It is well-settled in this Circuit that local legislators enjoy absolute immunity from suit for decisions made in their capacity as legislators. *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal,* 865 F.2d 77, 79 (4th Cir.1989); *Scott v. Greenville County,* 716 F.2d 1409, 1422 (4th Cir.1983); *Bruce v. Riddle,* 631 F.2d 272, 279 (4th Cir.1980) (holding "if legislators of any political subdivision of a state function in a legislative capacity, they are absolutely immune from being sued under the provisions of § 1983").

■ Defendants Grapes, Grimm, and Shaver are members of the Wood County Commission. Plaintiffs assert that while these Defendants are immune for acts performed in their legislative capacity, they are subject to suit for their enforcement or administrative acts. *See Front Royal,* 865 F.2d at 79. Plaintiffs have made no showing, however, that these commissioners will have any responsibility for enforcing or administering the Ordinance. In fact, Plaintiffs' complaint states that Defendant Reed will have such responsibility. Pls.' Compl. at ¶ 6. Plaintiffs' complaint merely alleges that Defendants Grapes, Grimm, and Shaver voted for the Ordinance.

The discretionary voting for and adoption of county ordinances represents the classic case for the interposition of the absolute immunity defense. Since Plaintiffs have failed to show that the Commission will exercise any enforcement or administrative powers in relation to the Ordinance, the Court concludes that Defendants Grapes, Grimm, and Shaver as individuals should be dismissed from this action.[4]

■ The immunity of law enforcement personnel and prosecutors, however, is not as all-encompassing. While these officials often enjoy immunity from damages liability, "they are natural targets for § 1983 injunctive suits since they are the state officers who are threatening to enforce and who are enforcing the law." *Supreme Court of Va. v. Consumers Union,* 446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980) (stating prosecutor subject to injunctive relief); *see also Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir.1980), *cert. denied,* 451 U.S. 969, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981); *Gross v. Tazewell County Jail,* 533 F.Supp. 413, 419 (holding sheriff is subject to injunctive and declaratory relief).

Defendants Reed and Greiner assert they are immune from injunctive relief. However, these Defendants have the primary responsibility for enforcing of the Ordinance. JSP at ¶¶ 5–6. Defendants curiously assert that since the Ordinance has yet to go into effect, injunctive relief is unwarranted. *See* Defs.' Mot. to Dismiss at 6–7. This contention is meritless. As noted in *Consumers Union,* individuals such as Reed and Greiner "are natural targets for § 1983 injunctive suits since they are the state officers *who are threatening to enforce"* the law. The Court therefore concludes that Defendants Reed and Greiner remain proper parties individually and in their official capacities.

### IV. CONSTITUTIONALITY OF THE ORDINANCE AND THE STATUTE

Plaintiffs assert that the Ordinance and Statute are overbroad.[5] Obscene material

---

4. Part of the requested relief in Plaintiff West Virginia Pride's complaint is that the Defendant Wood County and its "officers" be enjoined from enforcing the Ordinance. Any relief granted by this Court would provide as much. Therefore, any concern that the commissioners will be left free to enforce the Ordinance following their dismissal is meritless. The commis-

sioners remain Defendants in their official capacity.

5. Obscenity laws have been struck down as invalid when "not reasonably restricted to the evil with which [they] are said to deal." *Butler v. Michigan,* 352 U.S. 380, 383, 77 S.Ct. 524, 526, 1 L.Ed.2d 412 (1957) (stating that legislatures are not permitted to "burn the house to roast the

is not protected by the First Amendment. *Miller v. California,* 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973) (citations omitted). However, state statutes regulating obscenity must be carefully limited. *Id.* at 23–24, 93 S.Ct. at 2614–15. *Miller* stated the test for determining obscenity as follows:

> (a) whether "the average person applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 93 S.Ct. at 2615 (citations omitted).

■ The contours of the *Miller* test were refined in *Pinkus v. United States,* 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293 (1978) and *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). In *Pinkus,* the Court held that children could not be considered part of the "community" in determining whether material is obscene under *Miller. Pinkus,* 436 U.S. at 297, 98 S.Ct. at 1811.[6] In *Pope,* the Court held that the third or "value" prong of the *Miller* test was to be measured by "whether a *reasonable person* would find ... value in the material, taken as a whole." *Pope,* 481 U.S. at 500–01, 107 S.Ct. at 1921 (emphasis added). In doing so, the Court rejected the proposition that the relative value of putatively obscene material was to be judged in reference to contemporary community standards.

The challenged portions of the Ordinance and Statute provide:

> (3) "Individual" means *any human being regardless of age.*
> (4) "Obscene" means *matter which the average individual applying contemporary community standards would find* (i) taken as a whole, appeals to the prurient interest; (ii) depicts or describes in a patently offensive way ultimate sexual acts, normal or perverted, actual or simulated; and (iii) the matter, taken as a whole, lacks serious literary, artistic, political or scientific value, and which either:
> (A) Depicts or describes patently offensive representation of masturbation, excretory functions, lewd exhibition of the genitals, sodomy, fellatio, cunnilingus, bestiality, sadism, masochism; or
> (B) Depicts or describes nudity or sexual acts of persons, male or female, below the age of eighteen years.

(emphasis added).

The definition of "individual" plainly includes children within its reach. Further, obscenity is judged with reference to whether "the average *individual* applying contemporary community standards would find" it obscene. The provision is unambiguous and clearly contravenes *Pinkus.* It condemns material as obscene by impermissibly considering how those in their tender years would react to it. As stated in *Pinkus:*

> [I]t may well be that a jury conscientiously striving to define the relevant community of persons, the "average person," ... by whose standards obscenity is to be judged, would reach a much lower "average" when children are part of the equation than it would if it re-

---

pig"). An overbroad law, while attempting only to proscribe unprotected speech, includes both unprotected and protected speech within its sweep. *Gooding v. Wilson,* 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972); *see R.A.V. v. City of St. Paul,* — U.S. —, —, 112 S.Ct. 2538, 2550, 120 L.Ed.2d 305 (1992) (White, J., concurring). A statute's overbreadth must be substantial, judged in relation to its plainly legitimate sweep. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37

L.Ed.2d 830 (1973); John E. Nowak et al., *Constitutional Law* 870–71 (2d ed. 1983).

Plaintiffs also assert the injunction provision of the Ordinance and Statute are void for vagueness. The Court need not reach this issue.

**6.** The Court in *Pinkus* was dealing with the definition of obscenity under a federal statute. *Pinkus,* 436 U.S. at 297, 98 S.Ct. at 1811. However, Defendants concede that the *Pinkus* standard is proper also in the instant case. Defs.' Mot. to Dismiss at 17.

stricted its consideration to the effect of allegedly obscene materials on adults. *Pinkus*, 436 U.S. at 298, 98 S.Ct. at 1812 (citations omitted).

The provision thus is substantially overbroad. Its standard makes the Statute and Ordinance invalid in all possible applications.

Secondly, the provision applies the contemporary community standards measure to all three prongs of the *Miller* test. The provision also contravenes *Pope* by failing to indicate that "value" is to be judged in reference to a reasonable person standard and not in reference to the local community. The *Pope* decision represents a conscious choice to attempt to assure that "the value of the work [will not] vary from community to community based on the degree of local acceptance that it has won." *Pope*, 481 U.S. at 500, 107 S.Ct. at 1921.

The obscenity inquiry is often the subject of heated, emotional debate at the community level.[7] The provision at issue is substantially overbroad because it measures value with reference to these subjective predilections rather than *Pope*'s more detached, objective inquiry. Again, the Statute and Ordinance utilize an unconstitutional standard making them invalid in all possible applications.

The Court does not lightly strike down a law *in toto;* but the Statute and Ordinance are patently unconstitutional. Defendants have even conceded that the Statute and Ordinance, at least as written, do not comply with the requirements of *Pinkus*. They nevertheless assert two basic reasons to uphold the constitutionality of the provisions. The Court addresses each.

### A. The Presence of an "Authoritative Construction" by the Supreme Court of Appeals of West Virginia

 A state court should normally be given an opportunity to construe authorita-

tively its own statute on constitutional grounds. *See Ward v. Illinois*, 431 U.S. 767, 772, 97 S.Ct. 2085, 2089, 52 L.Ed.2d 738 (1977); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 499–501, 61 S.Ct. 643, 644–45, 85 L.Ed. 971 (1941); *Kucharek v. Hanaway*, 902 F.2d 513, 516–17 (7th Cir. 1990), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). *But see City of Houston v. Hill*, 482 U.S. 451, 468, 107 S.Ct. 2502, 2513, 96 L.Ed.2d 398 (1987) (recognizing federal court abstention is often inappropriate where free expression is at issue or statute is obviously not susceptible to a limiting construction). A state court may provide a binding authoritative construction of its own statute. *R.A.V. v. City of St. Paul*, —— U.S. ——, ——, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992); *Ward*, 431 U.S. at 772, 97 S.Ct. at 2089.

 Defendants assert that the Supreme Court of Appeals of West Virginia, in *Butler v. Tucker*, 187 W.Va. 145, 416 S.E.2d 262 (1992), authoritatively construed the Statute to comply with *Pope*. The court in *Butler* stated:

> We conclude that it is constitutional *because it embodies not only the general obscenity test authorized in Miller v. California, supra*, but also incorporates in paragraphs (A) and (B) of subsection (b)(4), the specific "plain examples" of obscenity set out by the Supreme Court in *Miller*.... Thus, both the statute and the Nicholas County ordinance *are facially constitutional and do not violate the First Amendment*....

*Butler*, 416 S.E.2d at 266 (emphasis added).

The state court also held that because the statutory language was clear and unambiguous, it was *prohibited* from construing its terms. *Id.* at 267 n. 8.

*Butler* provided a clear opportunity for the court to authoritatively construe the Statute to comply with *Pope*.[8] In the opin-

---

**7.** This is true of the instant case. It is undisputed that "the Ordinance was enacted after some eight months of heated debate during which numerous members of the community expressed their opinions to the [Commission], ... pro and con, as to whether the Commissioners should enact the Ordinance or whether Wood

County should continue to have no anti-obscenity law." Pl.'s Mot. for Summ.J. at 4–5.

**8.** The court stated "While [*Pope*] is thought of as a clarification of [*Miller*], it actually appears to have rejected the community standard test

ion of this Court, the West Virginia court failed to construe the Statute to bring it within the *Pope* decision. The Court accordingly rejects Defendants' argument.[9]

### B. The Doctrine of Severability

■■■■ Courts should refrain from invalidating more of a statute than is necessary. *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 1479, 94 L.Ed.2d 661 (1987). Unconstitutional statutory provisions are severable "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, [and after dropping the invalid part] *what is left is fully operative as law.*" *New York v. United States,* ─ U.S. ─, ─, 112 S.Ct. 2408, 2434, 120 L.Ed.2d 120 (1992); *Alaska Airlines,* 480 U.S. at 684, 107 S.Ct. at 1479; *see I.N.S. v. Chadha,* 462 U.S. 919, 931–35, 103 S.Ct. 2764, 2774–76, 77 L.Ed.2d 317 (1983). A legislative body would not intend "a constitutionally flawed provision to be severed ... if the balance of the legislation is incapable of functioning independently." *Alaska Airlines,* 480 U.S. at 684, 107 S.Ct. at 1479 (citation omitted). A statute's severability clause may give rise to a presumption of legislative intent for the remainder of a statute to stand independent of any invalid provision. *Alaska Airlines,* 480 U.S. at 686, 107 S.Ct. at 1481; *Chadha,* 462 U.S. at 932, 103 S.Ct. at 2774. West Virginia's general severability clause permits severance

> unless the court finds the valid provisions are so essentially and inseparably connected with, and so dependent upon, the unconstitutional or void provision that the court cannot presume the Legislature would have enacted the remaining valid provisions without the unconstitutional or void one, or unless the court finds the remaining valid provisions, standing alone, are incomplete and are

discussed in *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974)."

**9.** Defendants' argument also does not address the state court's complete disregard of *Pinkus.*

incapable of being executed in accordance with the legislative intent.

*W.Va.Code* § 2–2–10(cc) (1990).

■■■ Defendants seek severance of the term "individual" and the contemporary community standards provision as it relates to the value prong of the Statute and Ordinance. Defendants essentially argue as follows for the severance of "individual": (1) the Statute and Ordinance define both "person" and "individual"; (2) "individual" is synonymous with "person"; (3) if the term "individual" is severed, "person" may take its place. The Court questions why— if "individual" is synonymous with "person"—the Legislature chose to define both terms in the Statute. Second, the term "person" *includes* the term "individual" within its definition. Finally, "average *individual*" is contained in the very definition of "obscene." The Legislature obviously intended the terms to have different meanings. Even confronted with the strong constructional rule favoring severance, the Court concludes that after severing the definition of "individual," the remaining valid provisions, standing alone, are incomplete and are "incapable of being executed in accordance with the legislative intent."

■■■ Defendants argument in relation to the severance of contemporary community standards is more tenuous. Defendants essentially invite this Court to *authoritatively construe* rather than sever this portion of the Statute and Ordinance. However, federal courts lack jurisdiction to authoritatively construe state legislation. *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971); *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Thorne v. Bailey,* 846 F.2d 241, 245 (4th Cir.1988) (Butzner, J., dissenting), *cert. denied,* 488 U.S. 984, 109 S.Ct. 538, 102 L.Ed.2d 569 (1988); *Walker v. Dillard,* 523 F.2d 3, 6 (4th Cir.), *cert. denied,* 423 U.S. 906, 96 S.Ct. 208, 46

*Butler* failed to discuss and analyze the Statute's definition of "individual," which broadly and impermissibly includes children.

 

L.Ed.2d 136 (1975) (stating "[W]e doubt the power of federal courts to supply limiting constructions of state statutes").[10]

 A true severance of contemporary community standards from the Statute and Ordinance would result in no standard at all being applied to the three prongs comprising the definition of "obscene." This would contravene the holding in *Miller*, exacerbate the provision's unconstitutionality, and still require that the provision be rewritten. Such a severance would fail to leave the Statute and Ordinance "fully operative as law." Under *Alaska Airlines* and West Virginia's statutory severance provision, this result would also run counter to legislative intent.

The Defendants cite *Vernon Beigay, Inc. v. Traxler*, 790 F.2d 1088 (4th Cir. 1986), for the proposition that invalid portions of an obscenity ordinance should be excised as opposed to striking the entire ordinance. *Beigay* is wholly distinguishable. After being presented with an otherwise constitutional definition of obscenity, the court merely struck two ancillary provisions of the statutes. *Id.* at 1092–94. The court concluded, in part, that severance was appropriate because "without the two sections, the obscenity statutes ... fully comply with the requirements of *Miller.*" *Id.* at 1095. A severance of the contemporary community standards portion of the instant Statute and Ordinance would have the opposite effect. The Statute and Ordinance are not amenable to a mere trimming of offensive branches—they are, as characterized by one constitutional scholar, "rotten at [their] very root." Laurence H. Tribe, *American Constitutional Law* 1029 (2d ed. 1988).

## V. CONCLUSION

The Court concludes that the provisions of both the Statute and Ordinance are sub-stantially overbroad and violate the First and Fourteenth Amendments to the United States Constitution. The Plaintiffs' motions for summary judgment are granted and Defendants' motion is denied, with exception to the dismissal of Defendants Grapes, Grimm, and Shaver individually. It is ORDERED that Defendants, their officers, agents, servants, attorneys, and all persons in active concert or participation with them, be permanently enjoined from enforcing the Ordinance. The Court will address requests for attorney fees when the issue is fully briefed by the parties.

10. Even if the Court were permitted to construe the Statute and Ordinance, such a construction would be unavailing. Defendants proposed "construction" would essentially require the Court to rewrite the provision. *See United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985) (citation omitted) (stating "Statutes should be construed to avoid constitutional questions, but this interpre-

tative canon is not a license for the judiciary to rewrite language enacted by the legislature").

Further, the Supreme Court of Appeals' failure to authoritatively construe the Statute in *Butler* is evidence that the provision is not susceptible to a narrowing construction. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975).